[Crim. No. 5933. Second Dist., Div. One. Sept. 18, 1957.]

THE PEOPLE, Appellant, v. ANDREW JOHNSON, Respondent.

*Assigned by Chairman of Judicial Council.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Robert Lederman, Deputy District Attorneys, for Appellant.

Gerald J. Levie and Maynard D. Davis for Respondent.

FOURT, J.—This is an appeal by the People from an order setting aside an information, pursuant to the defendant's motion, under Penal Code, section 995.

On February 13, 1957, an information was filed in Los Angeles County, charging the defendant with grand theft, in violation of the provisions of section 487, subdivision 1, of the Penal Code. The defendant was duly arraigned, and at the time of plea he made a motion to set aside the information under section 995 of the Penal Code, and such motion was granted.

A résumé of the facts is as follows: Irwin Meyer is, and has been for several years, a merchant dealing in wearing apparel, doing business as the "Nobby Knit Shops." The defendant, for the last fourteen years, worked for Meyer as a combination janitor and truck driver. His duties as truck driver were largely in transporting merchandise from one

to the other of the four stores operated by Meyer. A large part of the merchandise was received and stored at the Westwood store, and from there delivered to the other establishments. The defendant had a key to the various stores and access to all of the merchandise therein, but he had no permission to take any merchandise from any store for his own use without paying for the same.

A quarterly inventory taken in October, 1956, for the term from July to October, 1956, disclosed a loss at the Westwood store of about $8,500 worth of merchandise for the four-month period. There was no objection to the receipt of any of the evidence relating to the matters thus far related.

The defendant owned a 1957 model Chevrolet automobile, and on January 12, 1957, when the defendant and Meyer were at the Beverly Drive store, Meyer asked the defendant if he could drive defendant's car, and the defendant indicated that he could, and gave Meyer the keys thereto. Meyer told the defendant that he would like to drive it because some day he might want to buy such an automobile for his son. There was no discussion about any permission to Meyer to open up and look into the trunk of the car. Meyer then drove the automobile around the block, stopped it and opened up and looked into the trunk of the car and discovered a large carton of merchandise containing sweaters, skirts, blouses, pedal pushers, and other garments, with price tags thereon showing that it was all from his stores. Meyer then drove the car to the police station, talked to the officers, and reported what he had found. A policeman got into the car with Meyer and they drove back to the Beverly Drive store, where the defendant was. The defendant was then taken to a police station, where he freely admitted to Meyer, in the presence of the police, that he had been taking items for about two years; that during the last six months, he had "stepped it up" some and that the value of the items stolen "was around about $8000.00." Meyer said to the defendant at that time, "I suppose it could be seven or ten or twelve," and the defendant answered, "Well it could be."

Meyer, as a witness at the preliminary examination, identified three white paper envelopes containing wearing apparel with price tags thereon as a part of the clothing retrieved from the trunk of the car.

The defendant contended before the trial court that it was an unlawful search and seizure, and under the rule of *People v. Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], the

receipt of the evidence was improper, and further that under the Fourth Amendment to the United States Constitution, and under article I, section 19 of the California Constitution, the search was unlawful and unreasonable, and therefore, the motion under section 995 of the Penal Code was proper and should be granted. The trial judge reluctantly granted the motion, saying, "I think it is unfortunate that the Court will have to dismiss it, because this man undoubtedly . . . is guilty of the charge, because he admitted it.

"Here we have to dismiss it because some individual went into his car without authority."

The main question to be determined is whether the exclusionary rule adopted in this state (*People* v. *Cahan, supra,* 44 Cal.2d 434), applies to evidence obtained by a private person, not employed by or associated with a governmental unit. We believe that the answer to that question is that it does not so apply.

The Fourth Amendment to the United States Constitution was, in substance, adopted in this state in the Constitutional Convention of 1849. In the reports of the debates in that Convention it is set forth: "Mr. Gwin said this section, as amended, was word for word from the Constitution of the United States, Fourth Article." (Browne, "Debates in the Convention of California.") The question was then put to the convention, and the wording was adopted. The provision, as then written, was carried over into the Constitution of 1879, and remains in our present Constitution unchanged.

The courts of the federal government have had occasion to pass upon substantially the same question presented here in interpreting the Fourth Amendment to the United States Constitution. In *Burdeau* v. *McDowell,* 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159], McDowell filed a petition asking for an order directing the return to him of certain papers and correspondence in the possession of Burdeau, the special agent to the attorney general of the United States. The petition set forth that Burdeau intended to use the papers and documents in securing an indictment of McDowell for the fraudulent use of the mails, that the papers, etc., were unlawfully seized and stolen from petitioner's office, that the person who got the papers drilled petitioner's private safes and blew them open, broke the locks upon his private desk and broke into his private office and abstracted the documents from his private files. Petitioner contended that the possession by Burdeau, the government agent, "was unlawful and

in violation of the legal and constitutional rights of the petitioner'' under the Fourth and Fifth Amendments to the Constitution of the United States. The trial court stated that it did not appear that the government had anything to do with the search and seizure of the papers and documents, but even so, held that the papers be returned to the petitioner upon the ground ''that the government should not use stolen property for any purpose after demand made for its return.'' The Supreme Court, in reversing the trial court, said among other things (pages 1050-1051, L.Ed.): ''The Amendments involved are the 4th and 5th, protecting a citizen against unreasonable searches and seizures, and compulsory testimony against himself. An extended consideration of the origin and purpose of these Amendments would be superfluous in view of the fact that this court has had occasion to deal with those subjects in a series of cases. (*Boyd* v. *United States*, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746 . . .; *Adams* v. *New York*, 192 U.S. 585 [24 S.Ct. 372, 48 L.Ed 575] . . .; *Weeks* v. *United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed 562, L.R.A. 1915B 834] . . .; *Johnson* v. *United States*, 228 U.S. 457 [33 S.Ct. 572, 57 L.Ed. 919, 47 L.R.A.N.S. 263] . . .; *Perlman* v. *United States*, 247 U.S. 7 [38 S.Ct. 417, 62 L.Ed. 950] . . .; *Silverthorne Lbr. Co.* v. *United States*, 251 U.S. 385 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426] . . .; and *Gouled* v. *United States*, decided February 28th, this term (255 U.S. 298, *ante*, 647 [41 S.Ct. 261, 65 L.Ed. 647].)

''The 4th Amendment gives protection against unlawful searches and seizures, and, as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the 4th Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

''In the present case the record clearly shows that no official of the Federal government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company. It is manifest that there was no invasion of the security afforded by the 4th Amendment against unreasonable search and seizure, as whatever wrong was done

was the act of individuals in taking the property of another. A portion of the property so taken and held was turned over to the prosecuting officers of the Federal government. We assume that petitioner has an unquestionable right of redress against those who illegally and wrongfully took his private property under the circumstances herein disclosed, but with such remedies we are not now concerned.''

Or, as said in 45 Illinois Law Review 1 (Northwestern University School of Law), at page 23 : ''This limitation is predicated upon the assumption that in terms of active peril to basic individual liberties an intelligible line of distinction may be drawn between illegal invasions of privacy by representatives of the public force and theft by private parties. That interests of a different order are involved may be indicated from the fact that the right of privacy protected by the Fourth Amendment proscribes only official invasion. While drawing such a distinction in the application of the exclusionary rule may occasionally make possible avoidance of the restraint of that rule by police officials determined to do so, the dangers of encouraging the lawless enforcement of the criminal law seem here obviously less substantial than those arising from sanctioning the introduction of evidence obtained by public officials, state or federal, in violation of the constitutional commands. Furthermore, where governmental authority has not been employed to secure the evidence in the first instance, the illegal acquisition of the evidence may more readily be separated conceptually from the operation of the judicial process.'' .

See also *Kaufman* v. *State,* 189 Tenn. 315 [225 S.W.2d 75] ; *Hughes* v. *State,* 145 Tenn. 544 [238 S.W. 588] ; *Love* v. *United States,* 170 F.2d 32; *Paper* v. *United States,* 53 F.2d 184; and *State* v. *Owens,* 302 Mo. 348, 377 [259 S.W. 100, 108].)

In the case of *Walker* v. *Penner,* 190 Ore. 542 [227 P.2d 316], a similar question to the one involved here arose over the seizure of an uncorked whiskey bottle with its contents almost gone, together with an opened and almost empty bottle of mix, which were located in an automobile after a car accident. At the trial the defendant moved to suppress the exhibits on the ground that they had been illegally obtained and the trial judge sustained the motion to suppress. The Supreme Court of Oregon, in reversing the trial court said (pp. 318-319) :

''It was error to sustain the motion to suppress this evi-

dence, even though it be conceded that the search and seizure were unlawful and therefore unreasonable within the meaning of U.S. Const. Amend. IV, and Or. Const. Art. I, Sec. 9.

"The Federal rule respecting the suppression of evidence procured by an unreasonable search and seizure, and which rule has been adopted in many states, refers largely, if not entirely, to criminal and quasi-criminal proceedings. It does not apply in civil cases between individuals. The doctrine, and the reasons therefor, are very clearly set forth by the United States Supreme Court in the case of *Boyd* v. *United States,* 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]. . . . (Citing other cases.)

"Moreover, under the Federal rule where the evidence has been procured through an illegal search and seizure *by persons other than governmental officers or agents,* such evidence may be used upon the trial of the defendant and will not be returned to the owner, even though a seasonable application may be made therefor; and this is true regardless of whether the search was made with or without a warrant. *Burdeau* v. *McDowell,* 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159]. . . . The constitutional restrictions against unreasonable search and seizure are intended as a limitation on the powers of government, and not a restraint on the unauthorized act of an individual. *State* v. *Lock,* 302 Mo. 400 [259 S.W. 116].

"In harmony with the doctrine announced in the case of *Burdeau* v. *McDowell, supra,* state courts have held that the protection of the state constitutional provisions prohibiting unreasonable searches and seizures applied only to searches and seizures by state and municipal officers, and not to private citizens. (Citing cases.)"

A reading of *People* v. *Cahan, supra,* 44 Cal.2d 434 [282 P.2d 905], would clearly indicate that the court in that case had in mind a correction of certain police actions and conduct, and not those of an isolated individual case where the individual had no connection whatsoever with any governmental agency. In a note on page 444 of the Cahan decision it is set forth:

"A distinction with respect to evidence illegally obtained by private individuals may be justified by the fact that the constitutional provisions only proscribe governmental action. 'It is one thing for the government to take advantage of information which one wrongdoer reveals of another, or the revelations which ensue when thieves fall out, and quite an-

other thing for the government to condone or encourage a violation of the law by officers sworn to observe and enforce the law. If peace officers are rewarded for breaching the peace, what more potent influence could induce people generally to hold the law in contempt and to break through legal barriers which stand across the path of their desires!' (*State* v. *Owens*, 302 Mo. 348, 377 [259 S.W. 100], . . .); see also Allen, *The Wolf Case*, 45 Ill.L.Rev. 1, 23.)''

In *People* v. *Martin*, 45 Cal.2d 755, 759-760 [290 P.2d 855], the court clearly set forth its reasons for the Cahan decision in saying:

''Thus, the rule of the lower federal courts is based on the theory that the evidence is excluded to provide a remedy for a wrong done to the defendant, and that accordingly, if the defendant has not been wronged he is entitled to no remedy. (*Connolly* v. *Medalie, supra*, 58 F.2d 629, 630.) In adopting the exclusionary rule, however, this court recognized that it could not be justified on that theory (*People* v. *Cahan*, . . .), and based its decision on the ground that 'other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activity of law enforcement officers.' . . .

''This result occurs whenever the government is allowed to profit by its own wrong by basing a conviction on illegally obtained evidence, and if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a limitation virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them.''

█ We believe that the type of situation represented in this case is the sort of matter the court in the Cahan case had in mind when it stated in substance that where there are only minor intrusions of privacy, or ''good-faith mistakes of judgment on the part of police officers,'' appropriate exceptions could be developed.

Surely, no one would contend that there is any undue outbreak or rash of employers searching employees' cars which need the attention of any of the courts of this state, to the end that the courts make a rule of evidence in relation thereto.

Heretofore, the police sometimes rode rough shod over individuals in securing evidence, and no amount of warning or other action seemed to have any effect on their course of conduct. The Supreme Court, to stop such course, simply said that evidence so secured in violation of a defendant's constitutional rights would be excluded, to guarantee against such unreasonable and unlawful searches and seizures by the police. In other words, a judicial rule of evidence to stop police from rampant, violent, illegal and unreasonable searches and seizures was adopted. The case before us is not even remotely close to the situation sought to be cured by the rule of evidence established in the Cahan case.

Furthermore, in this particular matter, we believe that there was sufficient evidence before the court to deny the motion made, without regard to the search and seizure element. The evidence indicates that about $8,500 worth of merchandise was missing from the Westwood store, that the defendant, an employee, had access and a key to the business places and frequently transported merchandise in his automobile, and later on the day of the arrest, admitted stealing "around about $8,000.00" in merchandise. Grand theft is defined, in part as follows, in Penal Code, section 487:

"1. . . . provided, further, that where the money, labor, real or personal property is taken by a servant, agent or employee from his principal or employer and aggregates two hundred dollars ($200) or more in any 12 consecutive month period, then the same shall constitute grand theft."

The corpus delicti may be established by evidence which would not be sufficient to convict upon a trial. The court in *People* v. *Mehaffey,* 32 Cal.2d 535 [197 P.2d 12], said (at page 545):

"But it is likewise well settled that to authorize their reception in evidence and consideration by the jury, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. (Citations.) It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom. (Citations.) Direct or positive evidence is not essential (citations), nor is it necessary at this point to connect the defendant with the perpetration of the offense (citations)."

In *People* v. *Selby,* 198 Cal. 426, at page 438 [245 P. 426], the court said:

"It may finally be said that the authorities are unanimous

on the proposition that the *corpus delicti* is not required to be established to a moral certainty and beyond a reasonable doubt before the extrajudicial statements, admissions, or confessions of a defendant may be received in evidence—*prima facie* proof of the *corpus delicti* being sufficient for that purpose.''

It would appear that the corpus delicti was established in this case and the defendant's admission of guilt was introduced thereafter. Such being the case, there was evidence to support the information and the motion under section 995 of the Penal Code should not have been granted. (*People* v. *Platt,* 124 Cal.App.2d 123, 130-134 [268 P.2d 529] ; *People* v. *Jackson,* 146 Cal.App.2d 553 [303 P.2d 767] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183-184 [281 P.2d 250].)

The order granting the motion pursuant to the provisions of section 995 of the Penal Code is reversed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.