ABRAHAM M. SACKLER, Appellant, *v.* GLORIA SACKLER, Respondent.

Second Department, May 28, 1962.

*Charles Rothenberg* of counsel (*Sidney Rothenberg* with him on the brief; *Rothenberg & Atkins,* attorneys), for appellant.

*Morris H. Halpern* (*Edward J. Bloustein* and *Abraham J. Heller* with him on the brief), for respondent.

BELDOCK, P. J. On April 5, 1961, in the Supreme Court, Kings County, the defendant wife obtained a judgment of separation from the plaintiff husband and thereafter moved into her own apartment. Some four months later, on August 20, 1961 at about 3:30 A.M., plaintiff and other members of a raiding party (none of whom was a police officer) entered defendant's apartment without her consent and without a search warrant, and allegedly obtained evidence of her adultery.

In this action for divorce, defendant moved to suppress and exclude the evidence so gathered. Special Term granted the motion on the grounds: (a) that although the Federal and State constitutional protection against unreasonable search applies only to official acts, the New York State statutory protection against unreasonable search, which is contained in section 8 of the Civil Rights Law, applies both to private and official persons; (b) that evidence gathered by private persons in violation of section 8 of the Civil Rights Law is inadmissible in civil suits; (c) that the search by plaintiff and his raiding

party was unreasonable because it was the result of uninvited entry; and (d) that the exclusion of the evidence is not contrary to public policy because it will protect the innocent spouse from nightly visitation even at the risk of protection of the adulteress.

In our opinion, the order of Special Term was erroneous because the exclusionary rule does not apply (a) to evidence gathered by private persons, or (b) to civil causes.

The Fourth Amendment of the Constitution of the United States protects against " unreasonable *governmental* intrusion " into the privacy of a person's home (*Silverman* v. *United States,* 365 U. S. 505, 511); and any evidence discovered as a result of such governmental intrusion is now constitutionally tainted and inadmissible in a State court criminal trial (*Mapp* v. *Ohio,* 367 U. S. 643; *People* v. *Loria,* 10 N Y 2d 368). The similar provisions of the Constitution of New York State (N. Y. Const., art. I, § 12) also relate solely to the sovereign authority and to its agencies (*People* v. *Appelbaum,* 277 App. Div. 43, affd. 301 N. Y. 738).

However, the Federal and State constitutional protection against unreasonable search and seizure by governmental action is not intended to be a limitation upon other than governmental agencies. Where evidence is gathered by private individuals in a manner which would be unlawful if done by governmental authority, there is no invasion of the constitutional security and the evidence is admissible (*Burdeau* v. *McDowell,* 256 U. S. 465). The *Burdeau* case, although decided some 40 years ago, has never been overruled.

*Elkins* v. *United States* (364 U. S. 206) held that evidence obtained by State officers during a search which, if conducted by Federal officers, would have violated defendant's immunity from unreasonable searches and seizures, is inadmissible over defendant's timely objection in a Federal criminal trial, and thus overruled the contrary holding in *Weeks* v. *United States* (232 U. S. 383). But *Elkins* did not overrule *Burdeau,* contrary to the opinion of the Special Term in the case at bar and to the dictum in *Williams* v. *United States* (282 F. 2d 940).

Although section 8 of the Civil Rights Law of this State (which contains the same language as the Federal and the New York State constitutional provisions against unreasonable search and seizure) has been held to apply to both official and private trespass (*People* v. *Defore,* 242 N. Y. 13, cert. denied 270 U. S. 657), the *Defore* case held merely that trespasses by police officers and private individuals in unreasonable search are on an equality only in that both are subject to certain liabilities and penalties. However, it was clearly stated that the public

policy of the State is that evidence obtained by such unreasonable search is admissible in evidence because the Legislature did not provide for its exclusion.

All that *Mapp* v. *Ohio* (*supra*) held was that evidence gathered by State officers as the result of unreasonable search and seizure was inadmissible in a State court criminal trial. It did not overrule and was not intended to overrule the public policy of this State as laid down in *People* v. *Defore* (*supra*) or the public policy of the United States as laid down in *Burdeau* v. *McDowell* (*supra*), namely: that a prosecutor might make such use as he pleased of information acquired from a trespasser if persons other than Federal or State officers were guilty of the trespass. Perhaps, as stated in *Defore,* the rule is logically subject to the criticism: (a) that the object of the trespass rather than the official character of the trespasser should test the rights of government; and (b) that we exalt form above substance when we hold that the use is made lawful because the intruder is without a badge of office. But until the *Defore* and *Burdeau* cases are directly overruled by courts of equal authority in respect to the use of evidence gathered by private trespassers, we as an intermediate appellate court should not take that forward step (*People* v. *Dinan,* 7 A D 2d 119, affd. 6 N Y 2d 715, cert. denied 361 U. S. 839).

None of the reasons given by the courts for excluding in criminal trials the evidence gathered by unreasonable search and seizure applies to civil causes. The admission of the evidence would not constitute a violation of the privilege against self incrimination (*People* v. *Defore,* 242 N. Y. 13, *supra; People* v. *Richter's Jewelers,* 291 N. Y. 161). Where evidence unlawfully seized is admitted in a criminal trial, there is encouragement of the lawless enforcement of the criminal law, with the government condoning violations of law by officers sworn to observe and enforce it. Here there is no government involved which, on the one hand, seeks to uphold the law, and, on the other, seeks to punish others for not obeying it.

Nor is the plaintiff in this action seeking to profit through his wrong by basing his action on the illegally obtained evidence. Plaintiff's intrusion into defendant's apartment did not affect " the equitable relations subsisting between the two parties " or arise " out of the transaction " so as to bring into play the doctrine of unclean hands (2 Pomeroy, Equity Jurisprudence [5th ed.], § 399). The relief to which plaintiff is entitled is not founded in any way on his wrongful conduct, but on defendant's alleged wrongful conduct.

In this State the rule is that evidence illegally obtained is admissible and competent in a civil action (*Bloodgood* v. *Lynch,* 293 N. Y. 308, and cases there cited). Even if it be assumed that evidence obtained by physical assault is inadmissible in a civil trial (*Lebel* v. *Swincicki,* 354 Mich. 427; cf. *Rochin* v. *California,* 342 U. S. 165), there was no physical assault here. Nor would the admission of the evidence of the event of August 20, 1961 be violative of defendant's rights under the equal protection clause of the Fourteenth Amendment to the Federal Constitution (cf. *Shelley* v. *Kraemer,* 334 U. S. 1).

The order insofar as appealed from should be reversed, without costs, and defendant's motion to suppress and exclude the evidence should be denied.

CHRIST, J. (dissenting). I dissent and vote to affirm.

*Mapp* v. *Ohio* (367 U. S. 643) does not decide whether evidence obtained by the commission of a crime may be used by the perpetrator in a civil suit. It is concerned only with a criminal prosecution in a State court. The United States Supreme Court, however, now compels our State to recognize the principle that a court of law should not accept as evidence the fruits of a crime (*People* v. *Loria,* 10 N Y 2d 368).

The fact of this recent pronouncement by the highest court in our land and its application in all Federal and State courts in criminal prosecutions gives new vitality to the claim for exclusion of tainted evidence in all lawsuits, civil as well as criminal. It is a strange concept which would permit a court of law to encourage the commission of illegal acts by honoring the fruits of the illegality, and which would permit the perpetrator to win a lawsuit by deliberately violating the law.

It would be a still greater anomaly to bar tainted evidence in a criminal case but at the same time permit its introduction in a civil suit. There is no sound reason for a different rule of admissibility between civil and criminal cases. It should be the same in both. Evidence obtained by the deliberate commission of a crime should be inadmissible on behalf of the perpetrator in the trial of a civil action.

HOPKINS, J. (dissenting). I dissent from the majority view on the ground so ably and succinctly stated by Mr. Justice CHRIST in his dissenting opinion, and also for the following additional reasons:

On this record I assume, as do the majority and as did the court below, that the intrusion by the plaintiff and his " raiding " party into the defendant's apartment, leased and occupied by her alone and without the plaintiff (from whom she was

separated pursuant to a subsisting separation decree) was accomplished by illegal means and constituted a trespass. We are told by one of the members of the party that the door was opened by a key. Although we are not told how the key was obtained, the defendant states that she had never given a key to the plaintiff, and had never given him permission to enter her apartment. Since these statements are not denied, it is a fair inference that the key was obtained and used illegally.

Prior to the determination in *Mapp* v. *Ohio* (367 U. S. 643), the New York courts followed a policy permitting the admission of illegally gathered evidence both in criminal and civil actions (*People* v. *Defore*, 242 N. Y. 13; *Bloodgood* v. *Lynch*, 293 N. Y. 308).[1]

Other State courts pursued the policy of excluding evidence tainted at the source. Between 1926, when *People* v. *Defore* (*supra*) was decided, and 1961, when *Mapp* v. *Ohio* (*supra*) was decided, a distinct trend favoring the exclusionary rule became clear. In 1926 only 14 States had adopted the rule of exclusion (*People* v. *Defore, supra,* p. 21); by 1961 nearly half of the States had espoused the rule in principle (8 Wigmore, Evidence [McNaughton rev. 1961], § 2183, p. 8). Prior to *Mapp* v. *Ohio* (*supra*) the exclusionary rule was not imposed on the States; and the Supreme Court had refrained from holding that the rule excluding illegally obtained evidence was an essential ingredient of the Fourth Amendment (*Wolf* v. *Colorado,* 338 U. S. 25, 27–29). But in *Mapp* v. *Ohio* (*supra,* p. 655), the Supreme Court has now said: ''We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.''

Before *Mapp* v. *Ohio* (*supra*), then, the treatment of the admissibility of evidence taken in violation of an individual's rights was shaped by the courts, for neither the Fourth Amendment to the Federal Constitution nor section 8 of the Civil Rights Law of New York State (now embodied in N. Y. Const.,

---

1. The *rationale* of the nonexclusionary rule rested in part on the fact that the question of illegality was a collateral issue (*Commonwealth* v. *Dana,* 2 Met. [43 Mass.] 329). Thus, it would require a hearing to determine the illegality evidence of course obviates that objection. Other grounds for the rule were that the illegality of the evidence did not affect its competency (*Sterison* v. *Earnest,* 80 Ill. 513), and that the Legislature should provide for the inadmissibility of such evidence when obtained by a private person (*Williams* v. *State,* 100 Ga. and interrupt the trial of the main issue. The modern motion to suppress the 511). It will be noted that the last two grounds are subject to the decision in *Mapp* v. *Ohio* (367 U. S. 643) that the Fourth and Fourteenth Amendments contain as a constituent part the prohibition of the admission of evidence obtained by an illegal search and seizure and presently have no logical foundation.

art. I, § 12) expressly prescribes that evidence obtained by means contrary to the guarantees pronounced by their provisions shall not be admitted into evidence (cf. *People* v. *Cahan,* 44 Cal. 2d 434). After *Mapp* v. *Ohio* (*supra*), the inadmissibility of such evidence was no longer a subject of judicial declaration, but '' is an essential part of both the Fourth and Fourteenth Amendments '' (*Mapp* v. *Ohio, supra,* p. 657). The rule of exclusion is consequently binding on the States, and has been so recognized in our State at least in criminal actions (*People* v. *Loria,* 10 N Y 2d 368).

In my opinion, *Burdeau* v. *McDowell* (256 U. S. 465) no longer survives as a precedent compelling the admission of illegally obtained evidence (*Williams* v. *United States,* 282 F. 2d 940). *Elkins* v. *United States* (364 U. S. 206), overturning the '' silver platter '' doctrine (*Lustig* v. *United States,* 338 U. S. 74), implicitly overruled the authority of *Burdeau* v. *McDowell* (*supra*). Though the majority opinion in *Elkins* did not mention the *Burdeau* case, the dissent does (*Elkins* v. *United States, supra,* p. 235). Even if a vestige of its authority remained, it was obliterated by *Mapp* v. *Ohio* (*supra*).

In formulating the rule of admissibility of infected evidence in civil actions our courts depended on the authority of *People* v. *Defore* (*supra*) (cf. *Bloodgood* v. *Lynch,* 293 N. Y. 308, *supra*).[2] *People* v. *Defore* (*supra*) considered the effect of section 8 of the Civil Rights Law of New York State (not then incorporated in our Constitution), and found nothing in the statute '' whereby official trespasses and private are differentiated in respect of the legal consequences to follow them,'' holding that '' [A]ll that the statute does is to place the two on an equality.'' (*People* v. *Defore,* 242 N. Y. 13, 21–22, *supra.*) The conclusion was accordingly reached that the rule of admissibility applied equally to both the public and private trespass. Now that the

2. Neither *Bloodgood* v. *Lynch* (293 N. Y. 308) nor *Hernandez* v. *Brookdale Mills* (201 App. Div. 325) cited therein, strictly speaking, are cases in which the evidence admitted was a product of an unlawful search or seizure. In *Bloodgood* the evidence consisted of a conversation between a State trooper and a litigant confined to a hospital, and was claimed to have been received in violation of section 270-b of the Penal Law, making it a crime to obtain a statement from a person in a hospital. In *Hernandez* the evidence consisted of documents allegedly delivered by an attorney in violation of his client's privilege.

It is noteworthy that many of the older precedents in favor of the rule of admission in civil suits did not concern evidence obtained through a violation of the constitutional immunity from an unlawful search or seizure (e.g., *Faunce* v. *Gray,* 21 Pick. [38 Mass.] 243; *Wood* v. *McGuire,* 21 Ga. 576; *Firth Sterling Steel Co.* v. *Bethlehem Steel Co.,* 199 F. 353).

balance of equality has been disturbed, the balance should be restored to apply the rule of exclusion in both cases.

Section 8 of the Civil Rights Law had its origin early in the 19th century (Rev. Stat. of N. Y., part I, ch. IV, § 11). Our courts have considered that its ambit includes civil litigation. "Under the broad provisions of the 4th amendment to the Federal Constitution and of our Bill of Rights (Civil Rights Law [Consol. Laws, chap. 6; Laws of 1909, chap. 14], § 8), which is substantially the same as that enacted in the other States of the Union, it has been held that the right to security of one's person, house, papers and effects against unreasonable searches and seizures extends as well to letters and sealed packages (*Ex parte Jackson,* 96 U. S. 727), and prohibits searches for property other than those to aid in the administration of the criminal law" (*Matter of Ehrich* v. *Root,* 134 App. Div. 432, 438; see, also, *Sanford* v. *Richardson,* 176 App. Div. 199, 203; *Matter of Foster,* 139 App. Div. 769; *Matter of Lehr,* 175 Misc. 914). In those cases the court held that an unreasonable search, even under the guise of legal process in civil actions, was deterred by the Civil Rights Law (cf. *Matter of Matson,* 293 N. Y. 476; and, see, *Hale* v. *Henkel,* 201 U. S. 43, 76; *Boyd* v. *United States,* 116 U. S. 616, 634).

It is anomalous to enforce opposite rules concerning evidence blighted by the same pollution. The unlawful search violates the identical privacy, whether its fruits are used to convict in a criminal prosecution, or to forfeit a personal right in a divorce action. Other States do not find the distinction.[3] If the defendant were prosecuted for the crime of adultery (Penal Law, § 101), the evidence would be excluded. Her right to defend herself and her home against the unlawful intrusion (Penal Law, § 246, subd. 3; § 1054), an act in itself a crime (Penal Law, §§ 2034, 2036), has precisely the same vigor and effectiveness whether exercised against a public officer or the plaintiff (cf. *Rager* v. *McCloskey,* 305 N. Y. 75, 79; *Brendlin* v. *Beers,* 144 App. Div. 403; *People* v. *Singleton,* 117 N. Y. S. 2d 114). Her personal liberty, and the security of her home, are fundamental rights woven into the fabric of the Federal and State Constitutions (1 Cooley, Constitutional Limitations [8th ed.], pp. 611, 630). "The common law has always recognized a man's house

---

3. *Lebel* v. *Swincicki* (354 Mich. 427); *City of Chicago* v. *Lord* (3 Ill. App. 2d 410, affd. 7 Ill. 2d 379); see, also, *Hartman* v. *Hartman* (253 Wis. 389), where evidence of a raid in a divorce action was admitted only because (1) the door had been voluntarily opened, and (2) no motion to suppress had been made prior to trial; cf. *United States* v. *Physic* (175 F. 2d 338 [C.C.A.]) — civil action for forfeiture of alleged contraband.

as his castle, impregnable, often, even to its own officers engaged in the execution of its commands. Shall the courts thus close the front entrance to constituted authority, and open wide the back door to idle or prurient curiosity?" (Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 220.) If that question be answered in the negative, then the same constitutional considerations and policy require exclusion of the evidence obtained by violence in an early morning divorce raid using the constitutionally prohibited device of an unlawful search and seizure.

The exclusion of the evidence would not sound the death knell of divorce actions in this State. For years circumstantial evidence of intent, opportunity, and inclination has been readily accepted as proof of the fact of adultery (*Allen* v. *Allen,* 101 N. Y. 658; *Roth* v. *Roth,* 90 App. Div. 87, affd. 183 N. Y. 520; *Shaw* v. *Shaw,* 155 App. Div. 252). Even here, in his complaint and bill of particulars the plaintiff alleges other claims of adultery by the defendant, so that the suppression of the evidence under the order does not necessarily bar plaintiff's ultimate success in the action.

The question is much the same as posed on a different but related subject: whether to enforce a bargain immoral in nature or prohibited by law. " Two irreconcilable inclinations fight in the bosom of the judge: the wish to preserve the efficacy of the criminal prohibition; and the will to do justice to a wronged plaintiff. To effect compliance with the criminal code requires not only the punishment of an offender but also removal of the tempting flavor of sin." (Silberg, Law and Morals in Jewish Jurisprudence, 75 Harv. L. Rev. 306, 316.)

Here we deal not with criminal sanctions, but constitutional guarantees granted to the individual to be secure in his home. The balance to be maintained between morality and law must be tipped in favor of that consideration resting on our fundamental law. As between plaintiff's right to a divorce, and the defendant's right to be secure in her home, the public policy underlying the provisions of the Federal and State Constitutions must be enforced to protect the defendant and prevent the future violations of the rights of other individuals. The character of constitutional rights is continually under reinterpretation. " That the individual shall have full protection in person and in property is a principle as old as the common law; but it has been found necessary from time to time to define anew the exact nature and extent of such protection. Political, social, and economic changes entail the recognition of new rights,

and the common law, in its eternal youth, grows to meet the demands of society.'' (Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, *supra*.)

Hence, I believe that the spirit of the decision in *Mapp* v. *Ohio* (367 U. S. 643, *supra*) constrains the adoption of the exclusionary rule in civil actions where evidence is obtained as a result of a violation of the constitutional immunity from an unlawful search and seizure. But even if it does not, a re-examination of the policy supporting the rule of admission indicates that it should be abandoned, for by the contrary rule of exclusion (1) the constitutional requirements are observed, (2) the practice of obtaining evidence by violence and trespass is discouraged, (3) the likelihood of injury and breach of the peace by lawful repulsion of the trespass is diminished, and (4) the courts are not placed in the position of enforcing one right by the disregard of another and greater right. As against these considerations it may, of course, be argued that the refusal to permit the reception of evidence of adultery gathered through an unlawful search promotes immorality and the negation of the marriage vows. That argument, however, is untenable, since adultery may be proved by other means within the law.

The order, therefore, should be affirmed.

Order, insofar as appealed from, reversed, without costs, and defendant's motion to suppress and exclude the evidence denied.

UGHETTA and HILL, JJ., concur with BELDOCK, P. J.; CHRIST and HOPKINS, JJ., dissent and vote to affirm, in separate opinions.