[Crim. No. 9259. Second Dist., Div. Two. Sept. 30, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. VICTORIA RANDAZZO, Defendant and Respondent.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, William E. Doran, Nowland Hong and Charles Luke McKissack, Deputy City Attorneys, for Plaintiff and Appellant.

Tweedy & Thompson and James R. Tweedy for Defendant and Respondent.

A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Defendant and Respondent.

FOX, P. J.—This case has been certified to this court by the Appellate Department of the Superior Court of Los Angeles County. The defendant was charged in the municipal court with a violation of section 484 of the Penal Code (theft). After pleading not guilty she was tried by a jury and found guilty. A new trial was granted on the ground that certain evidence admitted during the trial had been illegally obtained. The case was subsequently dismissed due to the suppression of said evidence. On appeal by the People to the appellate department the court affirmed the order granting a new trial and the judgment of dismissal.

On December 21, 1962, defendant removed several garments from a display rack in a May Company store in Los Angeles and took them into a dressing or fitting room. Mrs. Wade, a store detective employed by the May Company to detect shoplifters, and not connected in any way with a law enforcement agency, saw the defendant and entered the dressing room adjacent to the one occupied by defendant. Each dressing room was enclosed on three sides and had a curtain that could be drawn over the entrance. The partition which separated the dressing rooms extended to within 8 or 9 inches from the floor. By lying down on the floor of her dressing room Mrs. Wade was able to look under the partition and watch the defendant in the next enclosure. In so doing she observed defendant roll up a blouse and put it in her purse. Defendant then left the dressing room, returned the remaining garments to the rack, and walked out of the store without paying for the blouse. She was apprehended and arrested outside the store.

Mrs. Wade testified that it was normal procedure for her to watch customers in the manner complained of here, and that it was the only way that persons inside the dressing room could be observed. She also indicated that she had no reason to suspect this particular defendant and that she had made many arrests as a result of her observations in this fashion in the past.

The sole question certified to this court is: "Do the Fourth Amendment to the Constitution of the United States and section 19 of article I of the Constitution of California

which provide, 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches ..., shall not be violated' apply to unreasonable searches by state action only or do they apply to unreasonable searches by private persons as well as by state action?''

In view of the rulings in *Bielicki* v. *Superior Court*, 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], and *Britt* v. *Superior Court*, 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817], it appears to be the law of this state that had government officers acquired evidence in this manner it would not be admissible.

It must now be determined whether the exclusionary rule is to be extended to evidence obtained by private searches which, if carried on by the police, would render the evidence inadmissible.

In 1921 the Supreme Court in *Burdeau* v. *McDowell*, 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159], announced the rule that evidence obtained in an unreasonable search and seizure by a private citizen and subsequently delivered to federal prosecuting authorities was admissible. This case was a civil action for the return of the evidence that had been wrongfully taken from the plaintiff, based on a claim of violations of the Fourth and Fifth Amendments. The plaintiff was denied relief. Speaking of the Fourth Amendment the court said: ''Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; ...'' (P. 475 of 256 U.S. [p. 1051 of 656 L.Ed.; p. 1163 of 13 A.L.R.].) Justices Brandeis and Holmes dissented, pointing out that if the evidence were still in the hands of the original taker, it would be returned to the plaintiff, and saying in effect that since the evidence was wrongfully acquired, the mere fact that the government did not participate in the taking would not justify its use.

The decision in the *Burdeau* case is the only Supreme Court holding that bears directly on the issue of private unreasonable search and seizure. The case has never been expressly overruled, nor has it ever been reconsidered. Several federal cases, prior to 1960, mentioned the rule without questioning it. (See, e.g., *Hall* v. *United States*, 41 F.2d 54; *United States* v. *Jordan*, 79 F. Supp. 411.)

In 1960 the Supreme Court decided the case of *Elkins* v. *United States*, 364 U.S. 206 [80 S.Ct. 1437, 4 L.Ed.2d 1669].

The *Elkins* case overruled the "silver platter" doctrine which had previously been announced in *Weeks* v. *United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]. No longer could the federal prosecutors avail themselves of evidence obtained illegally by state authorities, even though federal agents took no part in obtaining it. Defendant in the instant case now argues, as does amicus curiae, that the decision in *Elkins* also overruled *Burdeau*.

Some support for defendant's proposition is found by way of dicta in two recent federal cases: *Williams* v. *United States*, 282 F.2d 940; *United States* v. *Williams*, 314 F.2d 795. In these cases the defendant argued that certain evidence was obtained by a city police officer through an illegal search and seizure, and was therefore inadmissible in a federal trial under the rule of the *Elkins* case. The court, in discussing the *Elkins* decision, lumps together the *Weeks* and the *Burdeau* cases and refers to both as representative of the "silver platter" doctrine that *Elkins* had overruled. The court then decided that *Elkins* was not applicable to the facts being considered because there had been no illegal search and seizure. No mention was made of the fact that *Elkins* specifically overruled *Weeks* and did not discuss *Burdeau*; nor of the fact that *Weeks* involved unauthorized searches and seizures by government officials, while *Burdeau* was limited to private persons.

Appellant's contention that the *Burdeau* case is still controlling in the present circumstances receives direct support from two recent federal district court decisions. In *Geniviva* v. *Bingler* (D.C.W.D. Pa. 1961) 206 F. Supp. 81, the petitioners made a motion to suppress evidence that had been stolen from them by a burglar and which was later turned over the to the Department of Internal Revenue when the burglar was caught. The court rejects the argument that *Burdeau* has been overruled, and states at page 83: "The rule as to the exclusion, in both federal and state courts, of evidence obtained by an unreasonable search and seizure in violation of the Fourth or the Fourteenth Amendment has been broadened and expanded since *Burdeau* v. *McDowell, supra.* The rule, however, has not been expanded to the extent that evidence obtained by persons not acting in concert with either state of federal officials must be excluded."

In *United States* v. *Goldberg* (D.C.E.D. Pa. 1962) 206 F. Supp. 394, defendant's employees stole certain corporate records and turned them over to the government. The records

were admitted over the defendant's objection that the evidence was the product of an illegal search and seizure. The court said, at pages 400-401: "Defendant contends that the principle of the *Burdeau* dissent was accepted as law in *Elkins* v. *United States* (1960) 364 U.S. 206 [80 S.Ct. 1437, 4 L.Ed.2d 1669]. We disagree. In *Elkins*, tape and wire recordings and a recording machine, *which had been seized by state law enforcement officers as the result of an unlawful search and seizure*, had been admitted in evidence in a Federal criminal trial. No Federal officer had participated in the unlawful search and seizure. A majority of the Court held that evidence so obtained could not be used and set aside the conviction. The court's ruling condemned lawless *official* action, not *private* wrongdoing, in the procuring of evidence. ... So far as our rather exhaustive research has disclosed, the principle of the *Burdeau* case remains intact." (Italics the court's.)

Many state courts have followed the rule of the *Burdeau* case on the Fourth Amendment, and also as applied to their particular state constitutional provision against unreasonable searches and seizures. Citation of the numerous cases decided prior to *Elkins* would serve no useful purpose other than to show that *Burdeau* was accepted as the general rule in most states. Consideration will instead be focused on the few post-*Elkins* decisions that have been discovered, none of which have been cited by the parties in their briefs.

A recent New York case held that in an action for divorce based on adultery, evidence obtained by the plaintiff in an illegal manner (breaking into defendant's apartment) was nevertheless admissible. In so holding the court reversed a previous decision in the same case, saying, "However, the Federal and State constitutional protection against unreasonable search and seizure by governmental action is not intended to be a limitation upon other than governmental agencies. Where evidence is gathered by private individuals in a manner which would be unlawful if done by governmental authority, there is no invasion of the constitutional security and the evidence is admissible [citing *Burdeau*]. The *Burdeau* case, although decided some forty years ago, has never been overruled." After discussing *Elkins*, the court continues: "But *Elkins* did not overrule *Burdeau*, contrary to [the decision being reversed] and to the dictum in *Williams* v. *United States* [282 F.2d 940] [discussed *supra*]."

(*Sackler* v. *Sackler* (1962) 16 App.Div.2d 423 [229 N.Y.S.2d 61, 63].)

In *Moody* v. *United States* (D.C. 1960) 163 A.2d 337, the defendant sought to exclude evidence obtained by the joint participation of a policeman and a private citizen. Although the decision of the Municipal Court of Appeals for the District of Columbia was based on the degree of participation by the police officer, the court said at page 340: ''Since the avowed purpose of the Fourth Amendment is to safeguard one's privacy from the arbitrary intrusion of the police, whether state or federal, it appears that *Elkins* would leave intact the decision of the *Burdeau* case.''

A defendant was prosecuted for drunk driving in *Commonwealth* v. *Tanchyn* (1963) 200 Pa. Super. 148 [188 A.2d 824]. A blood sample had been taken from his arm by a doctor when the defendant was almost unconscious. Defendant argued that evidence of his blood alcohol content as determined by the sample was not admissible because the sample had been taken in violation of the Fourth Amendment as applied to the states by the Fourteenth. The court, without mentioning *Elkins*, decided that *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], did not overrule *Burdeau*, and that since the doctor was not acting under any state authority the evidence was admissible under *Burdeau*.

The *Burdeau* case is also cited by the Indiana Supreme Court in *Knotts* v. *State* (1963) 243 Ind. 501 [187 N.E.2d 571]. In that case special police officers hired by and paid by a store to detect shoplifting observed defendants through a one-way mirror as they removed items from the counter and hid them on their persons. They were caught outside the store and arrested. The court cites *Burdeau* for the proposition that even if the special police officers were viewed as private citizens they could testify as to what they discovered on any search and seizure. It would appear, however, that the search to which the court refers is that which occurred after the defendant was apprehended. No significance is attached to the observation through the one-way mirror, probably because the thefts could have been observed by anyone in the store watching the defendants.

Turning finally to the decisions of our own state, we have been able to find only one appellate case which was decided squarely on the issue of private unauthorized search and

seizure. In 1957, the court in *People* v. *Johnson,* 153 Cal. App.2d 870 [315 P.2d 468], cited and followed the rule of the *Burdeau* case in admitting the evidence. There, an employer who suspected his employee of stealing from him borrowed the employee's car with the latter's consent. After driving out of sight he stopped and searched the trunk of the car, discovering numerous stolen items. He turned these over and the employee was arrested.

At the trial the defendant sought to exclude the evidence on the grounds of illegal search and seizure. The trial judge excluded it, saying that the manner in which it was obtained violated both the Fourth Amendment and section 19 of article I of the California Constitution.

On appeal the court reversed the trial judge and held that the evidence was admissible. After pointing out that the provision in the California Constitution is an adoption of the Fourth Amendment by this state, the court cites and quotes with approval from *Burdeau,* to the effect that private unauthorized searches and seizures are not proscribed by the state or federal Constitutions. In answer to the defendant's argument that the exclusionary rule and the policies of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], should be applied, the court notes that in *Cahan* a special footnote recognized the exception of the *Burdeau* case: "A distinction with respect to evidence illegally obtained by private individuals may be justified by the fact that the constitutional provisions only proscribe governmental action." (*People* v. *Cahan, supra,* at p. 444.)

One other California case has recognized and cited the rule of the *Burdeau* case but held it inapplicable where a private citizen who obtained evidence illegally was employed by the district attorney and the police department, worked under the supervision of the police, and was paid out of public funds. (*People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505].) It is not contended by defendant here, nor could it be, that the May Company store detectives were in any way connected with the government law enforcement agencies.

No California appellate court decisions since *Elkins* have been discovered,[1] and it is argued for defendant that the *Johnson* case, which relies on *Burdeau,* is no longer good law.

---

[1] We are aware of and have considered the views of the trial judge in a recent superior court case wherein evidence was excluded on the theory that *Elkins* had overruled *Burdeau.*

This argument, that *Elkins* overruled *Burdeau*, has been rejected by other courts that have considered it as can be seen from a review of the cases, *supra*. We are persuaded that these cases are sound in their treatment of *Burdeau* and that it has not been overruled.

In view of defendant's contention that her constitutional rights would be violated by admitting the evidence, we deem it appropriate to consider another obstacle to the application of the constitutional guaranties to defendant's asserted rights. It is a fundamental principle of constitutional law that only "state action" is prohibited by the Fourteenth Amendment. The only state action that could be argued in the present case would be admitting the evidence at the trial that had been obtained by the May Company store detective. As was said in 46 Minnesota Law Review, at page 1124: "To view this as unconstitutional state action would be to further extend the already strained concept of state action laid down by the Supreme Court in *Shelley* v. *Kraemer* [334 U.S. 1 (68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441)]. While the Court did hold in *Shelley* that it was violative of the Fourteenth Amendment for a state court to compel a private citizen to perform a contract which required racial discrimination in the sale of real estate, the facts in that case are hardly analogous to those in the instant case. In *Shelley* the lower court was asked to compel a private citizen to do an act which would be unconstitutional for the state to perform, whereas in the instant case the court was merely asked to give evidentiary status to illegally seized information." Defendant's reliance on *Abstract Investment Co.* v. *Hutchinson*, 204 Cal. App.2d 242 [22 Cal.Rptr. 309], is misplaced. That case, also involving a question of racial discrimination, applied the *Shelley* concept of state action to hold that it would violate the constitutional guaranties against discrimination for the court to enforce an action in unlawful detainer brought solely on the ground of defendant's race. Unlike the present case, the plaintiff in the *Abstract* case was trying to obtain judicial enforcement of discrimination which is constitutionally forbidden. The *Shelley* decision was obviously applicable in such circumstances, but we do not agree with defendant that the "state action" concept should be extended to include judicial acceptance or refusal of evidence in the present case.

Sound reasoning seems to support the retention of the rule of the *Burdeau* case. The exclusionary rule as extended in

*Elkins* and *Mapp, supra,* is not based on the idea that evidence obtained through unreasonable search and seizure is untrustworthy. It is designed to prevent the conduct itself because no other practical remedy is available to an innocent victim. Quoting further from 46 Minnesota Law Review at page 1124: "Where evidence is obtained by public officials through an unreasonable search and seizure there are, for all practical purposes, no sanctions outside of exclusion available. Public employees and governmental bodies enjoy certain immunities which generally foreclose the possibility of civil actions. Moreover, prosecuting attorneys who collaborate with the public officials who are obtaining evidence illegally are not prone to commence criminal actions against those same public officials. No such obstacles are present where the unreasonable search and seizure is made by a private citizen. Thus, there are effective sanctions in addition to exclusion which will deter private citizens from illegally obtaining evidence and punish those who do." See, e.g. *Sutherland* v. *Kroger Co.* (1959) 144 W.Va. 673 [110 S.E.2d 716], discussing a victim's right of recovery in tort from a private person for an illegal search, but citing *Burdeau* for the rule that evidence obtained thereby is admissible.

Defendant emphasizes that the May Company, as a part of its security protection, continuously places persons using its dressing rooms under the type of surveillance herein described and seems to attach some particular odium to such surveillance because of its continuous nature. This attack does not appear to be justified because these stores are continuously exposed, while open for business, to the type of thievery that was committed in this case. Hence their surveillance to be adequate must be commensurate, in point of time, with their exposure to such thefts, that is, during the entire time the stores are open and these dressing rooms are in use. The gravamen of defendant's position here is that she should not be convicted of theft because a representative of the store spied on her during the commission of the offense; it is not the purpose of this action to punish the May Company for carrying on such surveillance of other customers who perchance were not so outraged as defendant appears to have been when "caught in the act" of theft.

Defendant also suggests that the May Company was engaged in "dirty business" in conducting this surveillance of her and therefore on grounds of public policy the courts should not permit evidence so acquired to be used. It is diffi-

cult to appreciate the justification for such a charge against the May Company when, *without violating any statute,* it undertakes to protect its legitimate business against the thievery of a person who poses as a bona fide potential customer. It would seem more appropriate to say that the thief was engaged in "dirty business."

Furthermore, the millions that are lost each year through shoplifting must be treated by mercantile establishments as part of the cost of doing business. The price of their merchandise must be increased to cover this item with the result that the purchasing public has to pay the cost of this nefarious practice by way of higher prices for the merchandise it buys. Thus this problem has a substantial public impact. Hence in balancing the asserted rights of the shoplifter against the rights of the merchants and the purchasing public it would seem apparent that such balance should be in favor of the latter groups, and that public policy therefore would favor the courts accepting evidence acquired as herein, and thus punish the law violator and protect the merchant and the public.

To hold that evidence obtained as it was in this case by employees of the store is not admissible in a trial of the defendant for her theft is in effect to give shoplifters a "license to steal" and places responsible business concerns virtually at their mercy. It would add untold millions to the already heavy losses that merchants throughout the country sustain annually from the prevalence of this nefarious practice. We cannot approve a procedure which makes such a result possible, absent statutory or other clear and specific authority. No such authority has been presented, and our own research has not produced any.

The judgment and order are reversed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied October 28, 1963, and respondent's petition for a hearing by the Supreme Court was denied November 27, 1963. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.