Opinion
ALARCON, J.
The defendant has appealed from the order of the trial court denying her motion to suppress “all observations, objects, alleged admissions and any other evidence” pursuant to section 1538.5 of the Penal Code.
Pertinent Facts
No evidence was presented by the People. The defense called Amy Scanlon and the defendant in support of the motion.
Amy Scanlon testified that she was one of eight persons employed as a security agent for Bullock’s Westwood on the date the defendant was arrested. In the year and one-half preceding the defendant’s arrest she arrested approximately three dozen persons at Bullock’s Westwood. The procedure followed in effecting these arrests was to follow the suspect out of the store in order to prove “the suspect’s intent to deprive Bullock’s of their property.” The suspect is then escorted to the store’s security office where a report is made of the incident. After the report has been completed the police are contacted for “transport and booking.” The report is furnished to the police. The report contains “the source of activity, the observations and the details of the arrest.” The police are aware that Miss Scanlon has observed suspects through louvered doors but have never told her not to do so. More than half of the arrests made by the witness involved surveillance of individuals in the dressing rooms. The dressing rooms have four walls and a door. The door is louvered. Persons within the dressing room can be observed by someone standing outside the door and looking through the louvers. The room contains a three-piece folding mirror to permit customers to see themselves. A person standing outside can see the reflection of a customer who is standing directly in front of the mirror.
*Supp. 26 Miss Scanlon’s attention was directed to the defendant by a call from a salesperson. The defendant was observed through the door partly as reflected in the mirror and also directly as she moved closer to the door. Shortly after the arrest the defendant told Miss Scanlon “I’ve never done this before.” When the defendant was taken to the security office there were police officers in the building but the witness could not recall seeing any in that room. The arrest was based in part upon the observations of the defendant’s conduct in the dressing room. The defendant was advised by Miss Scanlon that the police would want to know certain background information to see if she would qualify for an O.R. release. The defendant was given a Bullock’s form to fill out which asked for her name, address, and phone number, and a list of the items taken. Police Officer Laws came to the security office some time after the defendant and Miss Scanlon arrived there. Officer Laws telephoned to check as to whether the defendant had a police record.
Miss Scanlon was not requested to investigate the defendant’s conduct prior to the arrest. No police officers were in the dressing room area at the time of the investigation by Miss Scanlon. No police officer assisted Miss Scanlon in the investigation or arrest of the defendant. When the defendant stated “I’ve never done this before,” the police had not yet arrived. At the time of the arrest, Miss Scanlon was not armed, was carrying but not wearing a badge, and was in “civilian attire.”
The defendant testified that she was arrested outside Bullock’s Westwood. She was escorted to the security office where she saw three policemen. Two of them left with another suspect. Officer Laws was there the entire time. Defendant asked Miss, Scanlon if she could see an attorney and was told she could call one at the station house. After an hour and one-half, a Bullock’s Westwood employee gave her a form to fill out. After she had partially filled out the form, she was told that the decision as to whether she would go to jail depended on her cooperation in filling out the document. She did not complete the form. The defendant was released at Bullock’s Westwood after signing a promise to appear in court. She was never taken to the police station. The defendant denied making the statement “I’ve never done this before.” Officer Laws asked her if she had ever been arrested before about “a good hour and a half to two hours” after she had been taken to the security office. The defendant testified that when she was first arrested Miss Scanlon said “Why do you think we have the mirrors arranged that way?” (In her testimony Miss Scanlon denied making this statement. Miss Scanlon *Supp. 27 testified that she replied “Yes” to the defendant’s question, “Do you mean you were looking through the doors?”)
Trial Court’s Findings
After argument the trial court made the following findings:
One. The witness, Amy Scanlon, was not a paid agent of a governmental agency.
Two. She did not act “in conjunction with state agents.”
Three. The police function was “purely incidental, and they acted as transportation officers.”
Four. “Amy Scanlon is a private citizen employed by a private organization.”
Five. She was not acting under the specific direction of any governmental agency.
Six. The testimony did not establish that the police stood “idly by, despite their knowledge of an ability to stop the conduct.”
The trial court denied the motion, holding that the exclusionary rule does not apply to “a private citizen who was not acting as an agent of the state or some other governmental unit.”
Defendant’s Contentions
1. The search was performed by Miss Scanlon in conjunction with state agents.
2. The exclusionary rule under article I, section 13 of the California Constitution applies to searches performed by members of private security forces.
3. Article I, section 1 of the California Constitution applies to searches and seizures by private persons.
*Supp. 28 Discussion
The evidence does not show that the security officer was acting as an agent or at the direction of the police. Instead, the testimony shows that all the activities of the security officer, concerning the defendant, prior to the arrest, occurred outside the presence and without the knowledge of any police officer. The security officer’s observations were those of a private citizen. “The Fourth Amendment does not apply, however, to searches by private individuals. (Burdeau v. McDowell (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159].)” (Stapelton v. Superior Court (1968) 70 Cal.2d 97, 100 [73 Cal.Rptr. 575, 447 P.2d 967].) The closest California case to our facts is People v. Randazzo (1963) 220 Cal.App.2d 768 [34 Cal.Rptr. 65]. In Randazzo, a store detective employed by the May Company observed the defendant in a dressing room by lying down on the floor and looking under a partition which separated the dressing rooms. The court held that the evidence obtained by the store detective, although probably illegal had it been acquired by the police (under Bielicki v. Superior Court (1962) 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288] and Britt v. Superior Court (1962) 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817]) was admissible because it was the product of a private search.
There was no evidence in the matter before this court which would support our invocation of the rule that an officer may not stand silently by while a private person conducts an illegal search in his presence without protecting the rights of the defendant (see Stapelton v. Superior Court, supra, 70 Cal.2d at pp. 102 to 103). The evidence shows that the observations were made before any police officer was aware of the security officer’s conduct as to this defendant. The defendant suggests that it was the duty of the police to inform Bullock’s Westwood security officers that observations through louvered doors were illegal and such surveillance should cease. Our attention has not been directed to any statute which makes an observation through a louvered door a crime. Section 653n of the Penal Code is expressly limited to two-way mirrors. Since the exclusionary rule applies solely to the conduct of a state agent, private searches are not illegal, nor are their fruits inadmissible unless a police officer is present and fails to take any action to prevent a violation of the rights of the individual subjected to a search which would be illegal if conducted by a state agent. The police were under no duty to warn Bullock’s Westwood against future private surveillance. On the contrary, the court in Randazzo concluded that public policy favored *Supp. 29 the gathering of evidence against shoplifters through clandestine surveillance methods by store employees because of the economic impact caused by such thievery (220 Cal.App.2d at p. 777). Therefore, at least in the eyes of the Randazzo court, it would be violative of public policy for a police officer to advise a merchant to cease surveillance as means of protecting his property. Until Randazzo is disapproved, the police, and this court, must follow its teaching.
The defendant has asked us to carve out an exception to the rule of Burdeau v. McDowell and extend the exclusionary rule to department store security officers. This court cannot do so while Randazzo remains viable authority, since that case also dealt with store detectives (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]).
The defendant has asked this court to hold that article I, section 1 of the California Constitution requires suppression of clandestine observations of a department store security officer into a dressing room regardless of whether a state agent directed the surveillance or stood silently by.
Article I, section 1, provides as follows: “All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety,. happiness, and privacy.” Article I, section 1 was amended in November 1972 to include privacy as one of the rights of all people. The California Supreme Court applied article I; section 1 to “intelligence gathering” in university classes by police officers in White v. Davis (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222], The Supreme Court held that the court erred in sustaining a demurrer to the complaint without leave to amend in a taxpayer’s suit filed against the Chief of Police of the City of Los Angeles. The objective of the taxpayer was to enjoin compilation of dossiers by undercover police officers from reports of discussions in the classroom and at meetings of university-recognized organizations. The complaint alleged that such reports “pertain to no illegal activity or acts.” The Supreme Court summarized the “principal ‘mischiefs’ ” at which the amendment was directed as follows:
“(1) ‘[Government snooping’ and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary *Supp. 30 personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third parly; and (4) the lack of a reasonable check on the accuracy of existing records.” (White v. Davis, supra at p. 775.) It is clear to us that article I, section 1 does not apply to the kind of activities here involved. The conduct of the security officer who makes observations through a louvered door does not involve personal data collection for later improper use not pertaining to illegal acts. The purpose of such surveillance is to detect crimes by specific individuals. The protection of its properly by a department store is a valid purpose which is specifically set forth as an inalienable right by article I, section 1.
Our Supreme Court has stated repeatedly that the California version of the exclusionary rule is based on article I, section 13 of our state Constitution. (People v. Ramey (1976) 16 Cal.3d 263, 271-276 [127 Cal.Rptr. 629, 545 P.2d 1333]; People v. Brisendine (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099]; People v. Norman (1975) 14 Cal.3d 929, 939 [123 Cal.Rptr. 109, 538 P.2d 237]; People v. Triggs (1973) 8 Cal.3d 884, fn. 5, 891-892 [106 Cal.Rptr. 408, 506 P.2d 232].)
We see no reason, based on the facts before this court, to create a new exclusionary rule to invalidate violations of article I, section 1.
The order denying the defendant’s motion to suppress is affirmed.
Cole, Acting P. J., concurred.