KNOLL ASSOCIATES, INC., Plaintiff,

v.

Paul Rand DIXON, the Federal Trade Commission, et al., Defendants.

United States District Court
S. D. New York.

July 13, 1964.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; Jacob Imberman, Samuel V. Greenberg, New York City, Morton M. Maneker, Washington, D. C., of counsel.

Robert M. Morgenthau, U. S. Atty., New York City, for defendants; Eugene R. Anderson, Asst. U. S. Atty., Harold D. Rhynedance, Jr., F. T. C., of counsel.

COOPER, District Judge.

Plaintiff's motion, brought on by order to show cause, is for a preliminary injunction arising out of its action filed here June 1, 1964. Defendants move to dismiss the complaint which seeks declaratory judgment, injunction and a writ of mandamus.

Over the issues raised here this Court has jurisdiction; proper venue lies, 28 U.S.C. § 1361 and § 1391(e).

In December, 1962, the Federal Trade Commission commenced an action against plaintiff alleging violation of Section 2(a) of the Clayton Act, 15 U.S.C. § 13(a). Testimony has been adduced before defendant Hearing Examiner in the F.T.C. proceedings. He has not yet filed his report; the record before him is almost complete. It is principally with the conduct of the proceedings before the Hearing Examiner that plaintiff complains. We shall address ourselves to the gravamen of those grievances.

Plaintiff claims that while in its employ, one Prosser, angered with his employer, took from its files without authorization certain documents which he promptly turned over to F.T.C. attorneys and offered himself as a witness in the F.T.C. proceedings against plaintiff. Most serious is the charge that such attorneys "cooperated" with Prosser in the "theft" of the documents, thereby invading plaintiff's constitutional rights; that the alleged unlawful removal of the documents constitutes an illegal search and seizure in violation of the Fourth Amendment to the Constitution; that Knoll's application to the Hearing Examiner, and interlocutory appeal to defend-

ant Commission, calling for a direction "that these attorneys be authorized and directed to testify concerning their complicity in the unauthorized removal of the documents" were erroneously refused (Plaintiff's memorandum p. 6); that the Hearing Examiner also denied plaintiff's motion "for the production of documents in the files of the Commission relating to the Commission's communications with Prosser * * *" and thus blunted plaintiff's "further attempt to bring out the facts concerning the relationship of the Commission's attorneys to the thief and the unlawful removal of the documents * * *" which were "essential for a full presentation of the evidence concerning Commission counsel's involvement." (Plaintiff's memorandum p. 6).

Plaintiff further claims it has been aggrieved by the refusal of the Hearing Examiner to direct the production by the Government of a written statement signed by Prosser before taking the stand.

In essence the situation briefly outlined in the two paragraphs immediately above constitutes the bases for plaintiff's action—the allegations of the complaint, for purposes of this application, considered true—and the instant proceeding for a temporary injunction.

Certainly it is clear that if, in the course of the proceedings before the Hearing Examiner, any of plaintiff's constitutional rights were disregarded, or if a substantial unfairness were accorded plaintiff there so that a fair and impartial hearing was denied it, or the proceedings were tantamount to an unwarranted trespass upon its rights, this Court should not hesitate to step in. Under 28 U.S.C. § 1361 the Court has jurisdiction to compel the performance of a duty, and this goes far beyond ministerial duties, for fundamental trial rights are not immaterial.

Such judicial interference is not warranted, however, if the alleged irregularities are of such nature as would not prevent a valid order ultimately issuing from the administrative agency. Fed-

eral Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 146, 60 S.Ct. 437, 84 L.Ed. 656 (1940); Public Utilities Commission v. United Fuel Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); National Lawyers Guild v. Brownell, 96 U.S.App.D.C. 252, 225 F.2d 552, 555 (1955), cert. denied, 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956). In the case last-named, an observation pertinent here was made:

> "We cannot assume in advance of a hearing that a responsible executive official of the Government will fail to carry out his manifest duty. Our conclusion on the point is that the plaintiffs must await the event rather than attempt to anticipate it."

We have no hesitancy in declaring that if the record before us contains any one of the objections strenuously presented by plaintiff, judicial direction would be warranted here and now, provided plaintiff has met the test that it "must make the strongest kind of showing; his jurisdictional 't's' must be crossed and the factual 'i's' dotted." Wolf Corporation v. Securities and Exchange Commission, 317 F.2d 139, 143 (D.C.Cir. 1963).

What then does the record really show? It shows an orderly and considerate proceeding before the Hearing Examiner supporting this ruling:

> "The documents allegedly unlawfully seized have not been proven to be the property of the complaining party. The Federal Trade Commission, against whom complaint is made, had absolutely nothing to do with Prosser's reducing the documents to possession. In summary, there simply is no unlawful search and seizure proven or inferable in this record."

■ As to Prosser's statement signed by him prior to the hearing: While full opportunity existed to do so, no foundation was laid calling for its production. From the transcript of the hearings before the Hearing Examiner, it appears that plaintiff neither challenged Prosser's credibility nor charged inconsistencies in his testimony nor claimed the statement essential for impeachment purposes. The Jencks doctrine is applicable to statements made to government agents by government witnesses and in areas of trial substantially differing from the situation here where Prosser, after all, was plaintiff's witness even though a hostile one. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); 18 U.S.C. § 3500.

■ Some of the contested documents have been received in evidence by the Hearing Examiner. Plaintiff's motion to strike them is *sub judice*. The Hearing Examiner has yet to make his decision on the merits, reviewable first by the Commission and then by the Court of Appeals. At this point in the administrative proceedings, we should remind ourselves of the pertinent observation in Home Loan Bank Board v. Mallonee, 196 F.2d 336, 357 (9th Cir. 1932):

> "Long ago the Supreme Court announced the principle that 'Courts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law.'
> * * * "

■ Plaintiff's complaint as to the deportment of F.T.C. attorneys finds no support throughout the entire record. Not a scintilla of evidence exists to indicate the slightest knowledge or any participation whatever in the alleged but unresolved unlawful taking by Prosser of the documents here involved. It was not incumbent on them to prove their innocence.

■■ Evidence obtained by thievery resorted to by a private person in which the Government has no part does not constitute illegal search and seizure and does not render the evidence inadmissible. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) dealt with entirely different situations and principles, the former that evidence obtained by illegal search on the part of state officers was inadmissible in federal criminal trials, the latter case holding that evidence secured by illegal search resorted to by state officers was not admissible in state courts.

Before the Hearing Examiner, Prosser was plaintiff's witness—hostile it is true. Nevertheless, no attempt was made to elicit from him testimony concerning participation by anyone on behalf of the Government to obtain the documents or about his contacts with F.T.C. attorneys—clearly these go to the very heart of plaintiff's grievance. His examination was a comparatively mild one, not pursued in depth. Plaintiff complains that even though it possessed no other or independent proof of Government participation in the "theft," it could hardly be expected to touch upon it, let alone establish it, through the hostile witness Prosser.

Prosser's hostility alone did not forecast that his testimony would be unfavorable to the party calling him. Practically we find it frequent (although often pronounced most unlikely) that the interrogator properly prepared can handle and meet the challenge hurled by the hostile witness, and extract the truth from him albeit resentfully and disgruntledly given. The pursuit of truth often proves a difficult experience. It emerges from the most unlikely sources; almost daily from reluctant lips in particular (what great liberties often are taken with it by those from whom we expect it in nascent form!).

Not at all uncommon at law enforcement offices is the appearance of complainants seething with hate, or filled with fanciful tales, or saturated with determination to visit harm even if it includes assault upon truth. Frequently they appear with supporting documents, which upon imperatively diligent inquiry, prove to have been illegally acquired. These persons present enormous challenges, requiring on the part of officials the most careful scrutiny, meticulous sifting and checking, and nothing short of mature deliberation and decision as to which of such disclosures are either unfounded, and should be rejected, or worthy of presentation with full disclosure at open hearing.

Bearing in mind that there is not a shred of evidence showing knowledge of, or participation in, the alleged "theft" of the documents by any Government employee, we are confronted then with this situation: When Prosser made contact with the F.T.C. attorney in charge of the case and stated he had "a lot of incriminating evidence" and "enough papers to hang" plaintiff, and promptly made arrangements to talk to F.T.C. representatives, they were duty bound to hear his account, proceed with extreme caution, assume the responsibility of rejecting or presenting it fully, and in the event of the latter decision, leave it to the trier of the facts to determine the weight to be given to his testimony, if offered, and to the documents—in the light of his hostility and the manner by which he acquired them. For the Government attorneys to do less might well subject them to the charge of dereliction of duty. This is not to condone any wrong-doing by Prosser if that should prove to be the case; in that event, there is a proper time and place to hold him to account.

If from Prosser, or any other source, there had been at least a minimum showing of Government knowledge or participation at the time of the alleged taking, the presiding hearing officer would have no alternative but to delve deeply into the affair and let the chips fall where they may, with the total exclusion of all the documents a certainty, if the proof supported such a finding.

Unless convincingly shown to the contrary, the trier of the facts can be depended on to employ such criteria as the law countenances to discover where fact or falsity exists. In his mission of fact-finding, by no means does he depend solely on the actual words uttered

by a witness. An exhaustive examination of Prosser might well have afforded the Hearing Examiner ample opportunity to put such criteria to the test.

While not controlling in all situations, in this particular case it is not specious argument by the Government to urge that the F.T.C. attorneys were precluded by statute from revealing, and by inquiry to the Commission, were not authorized to furnish any documentary material or to testify concerning the instant proceedings (§ 10 Federal Trade Commission Act, 15 U.S.C. § 50).

In support of the proposition that "the imperative of judicial integrity" requires the exclusion of these documents, plaintiff refers to Elkins v. United States, supra, where the Court, quoting Mr. Justice Brandeis, said:

> " 'In a government of laws' * * * 'existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' "

These are memorable lines indeed, and call for the strict accountability by all Government employees if, as and when their spirit or letter is offended. The same harrowing results predicted by those lines, however, will follow if, without provocation, Government servants engaged in the proper and vigorous performance of duty are automatically suspect. Until the contrary is at least effectively indicated, we must regard the F.T.C. attorneys here referred to, based on the record as it now stands, as advocates fully cognizant of their oath of office, vitally concerned with the lawfully approved administration of justice, and intent, along with all upright counsel, in being "sleepless sentinels on the ramparts of justice, ever ready to sound the alarm when an enemy appears." (Hon. John W. Davis.)

Exclusively as a matter of law then, the application for preliminary injunction is denied and the cross motion for dismissal of the complaint granted.

Settle order promptly on three (3) days notice.