J. Irwin Shapiro, J.
The motion to suppress in this case was granted to the extent of ordering a hearing. Upon the hearing it appeared that the defendants were seen in the lobby of an apartment building by the superintendent of that building. They *40 looked suspicious to him and he thereupon escorted them to the basement of the building where he, apparently aided by three or four assistants, searched both defendants. Lock picks and celluloid strips commonly used in burglaries were found upon them. These were then returned to them and the police were called.
A patrolman responded and was told by the superintendent what had transpired and that the defendants had in their pockets the picks and celluloid strips. The police officer thereupon placed the defendants under arrest and took from them the lock picks and celluloid strips.
At the precinct both defendants were again searched by a detective. On Torres were found credit cards belonging to a tenant of a neighboring building, and Cuesta was wearing a watch which apparently was part of the proceeds of a burglary committed in the building in which he was arrested.
At the conclusion of the testimony both defendants conceded that their application for suppression was not based upon any lack of probable cause for the arrest and search by the police when they arrived but upon the admittedly unauthorized and illegal search conducted by the superintendent of the building.
I have been unable to find any appellate decision in this State dealing directly with this question. Sackler v. Sackler (15 N Y 2d 40) was a divorce action in which the proof as to the defendant’s guilt of adultery was obtained by an illegal forcible entry into the home of the wife by her husband, the plaintiff, and by several investigators employed by him. Although the language of the majority opinion (p. 43) clearly indicates that the ‘ ‘ Fourth Amendment protections of privacy against unlawful searches and seizures have their origins in English law of the 17th Century and earlier (Lasson, History and Development of the Fourth Amendment [Johns Hopkins Press, 1937], passim; and see historical material in Boyd v. United States, 116 U. S. 616, 624-630 [1886] ” and that “ Never were those protections applicable to searches and seizures by any persons other than government officers and agents” the court nevertheless (p. 44) made it clear that it was not passing upon ‘ ‘ whether evidence wrongfully obtained by private individuals may be used by the State in a criminal prosecution ” and that the only question it was determining was that evidence illegally obtained by persons not in governmental service could not “be rejected in a civil litigation, in the absence of constitutional or .statutory compulsion for such rejection ”.
In the case at bar there was no governmental violation of any of the defendants’ constitutional rights. While it is true *41 that the search conducted by the superintendent and his aides was based upon mere surmise and suspicion and was in that sense unreasonable, the kind of unreasonable search and intrusion inveighed against by the first 10 Amendments of the United States Constitution (particularly the Fourth Amendment) and by section 12 of article I of the New York State Constitution is that occasioned by those acting with governmental authority, or at least under the color of governmental authority.
Corpus Juris Secundum under Searches and Seizures (vol. 79, § 5, subd. c) states the rule as follows: “ Constitutional provisions prohibiting unreasonable searches and seizures are intended to protect against action by the government, its officials and agents, and neither the federal provision nor those of the states have any application to the unauthorized acts of private individuals ”. (Emphasis supplied.)
American Law Reports (2d series, vol. 50, § 9, subd. b, pp. 531, 570-571) expresses the prevailing view as being that the exclusionary rule does not apply “ where the evidence was procured by an unlawful search made by a private individual acting on his own initiative ”.
In Burdeau v. McDowell (256 U. S. 465, 472) the books and papers had been taken by private detectives. The District Court ruled against their use by the Government “ solely upon the ground that the Government should not use stolen property for any purpose after demand for its return ”.
The Supreme Court reversed, permitted the use of the books and papers, saying “ the record clearly shows that no official of the Federal Government had anything to do with the wrongful seizure of the petitioner’s property” (p. 475) and that the Fourth Amendment was “intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies ” (p. 475).
In People v. Appelbaum (277 App. Div. 43, 45, affd. 301 N. Y. 738), the court held that section 12 of article I of the New York State Constitution (the counterpart to the Fourth Amendment’s search and seizure provision) “ relate [d] solely to [illegal conduct by] the sovereign authority and its agencies and not to individuals ”.
In United States v. Goldberg (330 F. 2d 30, cert. den. 377 U. S. 953) documents and records which belonged to the corporations of which taxpayer defendant was president were retained by former employees of the corporation without the taxpayer’s knowledge. They were supposed to have been rewritten, at defendant’s request, and the originals were to have been destroyed. In upholding their admission the court said (p. 35):
*42 “We think the documents and records were clearly admissible under Burdeau v. McDowell
In United States v. Frank (225 F. Supp. 573, 575) the court relying upon Burdeau said: ‘ ‘ any possible irregularity * * * was solely the responsibility of private persons, with no connection or collusion of any kind with any law enforcement agent ” and therefore “ the exclusionary rule does not apply ”.
In People v. Johnson (153 Cal. App. 2d 870) the employee’s car was illegally searched by his employer who by means thereof discovered evidence of theft. The employer then drove the car to a police station and reported to the police what he had found. It was held, again in reliance upon Burdeau, that the evidence thus illegally, but privately, obtained was not inadmissible in the trial of the employee for the theft.
The Burdeau case was also followed in People v. Randazzo (220 Cal. App. 2d 768, 770, cert. den. 377 U. S. 1000). The Appellate Court, in a comprehensive opinion said: ‘‘ The decision in the Burdecm case is the only Supreme Court holding that bears directly on the issue of private unreasonable search and seizure. The case has never been expressly overruled, nor has it been reconsidered.”
In Bacon v. United States (97 F. 35, 40) the court said: “ It is held very generally that, if an individual by an illegal search or seizure obtains possession of an article or document, the state may nevertheless make use of the same as evidence against the person from whom they were wrongfully obtained to convict him of a crime; and that the inhibition found in article 4 of the amendments to the federal constitution, and in many state constitutions, against unreasonable searches and seizures is a limitation upon the power of the state to make such searches and seizures for its own benefit, and has no reference to unauthorized acts of individuals. Gindrat v. People, 138 Ill. 103, 27 N. E. 1085; Shields v. State, 104 Ala. 35, 16 South. 85; Com. v. Dana, 2 Metc. (Mass.) 329, 337; State v. Flynn, 36 N. H. 64; 1 Greenl. Ev. § 254-a, and cases there cited; This, in our opinion, is a reasonable doctrine, when we remember that the common law has always afforded ample remedies for illegal acts committed by individuals, and that the inhibition against unreasonable searches and seizures found in the organic law owes its origin to acts of that nature which at one time were frequently committed by the sovereign on the pretense that they were necessary for his own protection or the protection of ffh p. stEffco ^ *
In Knoll Assoc, v. Dixon (232 F. Supp. 283), the court stated the applicable rule very pointedly when it said: “Evidence *43 obtained by thievery resorted to by a private person in which the Government has no part does not constitute illegal search and seizure and does not render the evidence inadmissible ’ \
See, also, to the same general effect as the above Sartain v. United States (303 F. 2d 859); Marshall v. United States (352 F. 2d 1013); Genivia v. Bingler (206 F. Supp. 81); People v. Trimarco (41 MisC 2d 775); State v. Robinson (86 N. J. Super. 308); State v. Olsen (212 Ore. 191); Walker v. Penner (190 Ore. 542); State v. Wills (91 W. Va. 659); People v. Touhy (361 Ill. 332) and Kaufman v. State (189 Tenn. 315).
The defendants rely heavily on Gambino v. United States (275 U. S. 310) and United States v. Viale (312 F. 2d 595, cert, den. 373 U. S. 903). Both cases are in my opinion inapposite. In Gambino the defendants were arrested by New York State troopers and their automobile was searched without a warrant. The liquor found therein was immediately turned over “ to a federal deputy collector of customs for prosecution ” (p. 313) and the court found as a fact that ‘‘ the wrongful arrest, search, and seizure were made solely on behalf of the United States ” and “ the prosecution thereupon instituted by the federal authorities was, as conducted, in effect a ratification of the arrest, search and seizure made by the troopers on behalf of the United States ” (pp. 316-317; emphasis supplied).
Under such circumstances, said the court (p. 317), the liquor seized illegally should have been suppressed, but it noted that “ the conclusion here reached is not in conflict with any of the earlier decisions of this Court in which evidence wrongfully secured by persons other than federal officers has been held admissible in prosecutions for federal crimes” and as if to emphasize what it meant it cited Burdeau v. McDowell (supra) with approval in the very same paragraph of its opinion in which the above statement is contained.
United States v. Viale (supra), the other case relied upon by the defendant, must be deemed sui juris. The search there was conducted by Federal internal revenue agents who, without a search warrant, had no power to make a search beyond that possessed by any private individual. Under those circumstances, and testing what the revenue agents did as private individuals, the court held that there was no reasonable ground for the arrest by them of the defendant and therefore none for the ensuing search.
That case is not here in point, for, though any restriction of the liberty of movement of an individual by police officers may for certain purposes constitute an arrest (Henry v. United States, 361 U. S. 98), it is clear that in this case the superintend *44 ent did not in fact intend to arrest the defendants and that a call was put through to the police to advise them of the facts and to leave the subsequent steps to be taken, if any, to them. Upon this record it was the police who made the arrest after they had been told by the superintendent what he had found on his search of the defendants.
There are other cases, not cited by the defendants such as Lowry v. State (42 Okl. Cr. 326); People v. Martin (225 Cal. App. 2d 91) and Moody v. United States (163 A. 2d 337 [Mun. Ct. App., D. C.]), which support the position taken by the defendants here but they are out of tune with the majority view in this area of the law and, in my opinion, should not be followed.
Having come to the conclusion that if an individual by an illegal search and seizure obtains possession of property without prearrangement with, or connivance by the State, the latter may nevertheless use it as evidence against the person from whom it was wrongfully obtained to convict him of a crime, and that its manner of acquisition can and should be separated from the operation of the judicial process, the motion of the defendants to suppress the items found upon them is in all respects denied.