Pedro J. ALBERIO, Ismael Rivera, Local 2577, American Federation of Government Employees, AFL–CIO, A.F.G.E., Plaintiffs,

v.

Robert E. HAMPTON, Chairman, Georgiana H. Sheldon, Vice Chairman, Ludwig J. Andolsek, Commissioner, United States Civil Service Commission, William E. Simon, Secretary of the Treasury, Vernon D. Acree, Commissioner of Customs, Defendants.

Civ. No. 76–426.

United States District Court,
Puerto Rico.

May 23, 1977.

Raymond J. Malloy, Asst. Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., for plaintiffs.

Julio Morales Sanchez, U. S. Atty. and Jesus A. Castellanos, Asst. U. S. Atty., D. Puerto Rico, San Juan, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

Plaintiff, Pedro J. Alberio, is a former Supervisory Customs Patrol Officer, U. S. Customs Service, San Juan, Puerto Rico, who was removed from his position with the Customs Service on August 27, 1975, for

the alleged violation of Department of Treasury Minimum Standards of Conduct, Section 0.735.48, entitled "Giving Testimony", and Customs Conduct and Employees Responsibilities, Chapter 735, Subchapter 2, Part 12, entitled "Furnishing Testimony and Information." These charges were based upon allegations that he made false statements and representations in regard to an investigation into a matter within the jurisdiction of the Customs Service and the Immigration and Naturalization Service concerning fraudulent obtainment of visas and participation of Customs employees therein in violation of criminal statutes. In appealing his removal to the Federal Employee Appeals Authority (FEAA), Alberio informed said appellant authority that he wished to be represented by Coplaintiff Ismael Rivera, a National Representative of the American Federation of Government Employees, AFL–CIO (AFGE), a labor organization which acts as the exclusive representative of employees of the U. S. Customs Service in Puerto Rico. The FEAA determined that Mr. Rivera's representation of Alberio raised the question of conflict of interest. The FEAA determined that such a conflict would occur if Rivera, a National Representative of AFGE, were to represent Alberio, a supervisor, whose subordinates are members of the existing Bargaining Unit of the AFGE on matters of labor relations.

As a result of the F.E.A.A. determination, Plaintiffs sought injunctive, mandamus and declaratory relief from this Court for the alleged violation of their due process rights guaranteed under the Fifth and Sixth Amendments to the Constitution of the United States, rights under the Veteran Preference Act and Regulations, as well as rights protected under the First Amendment dispositions of freedom of expression and assembly. Jurisdiction is invoked pursuant to the provisions of Title 5, United States Code Section 702, et seq., and Title 28, United States Code, Sections 1331, 1346, and 1361.

### Jurisdiction

Plaintiffs allege several grounds as basis for this Court's jurisdiction over their claim. Defendants, in turn, have challenged the Court's jurisdiction generally. Although Defendants' arguments regarding this Court's lack of jurisdiction under the provisions of 28 U.S.C. 1331 and 1346 [1] are persuasive, the Court is nevertheless satisfied that it has jurisdiction pursuant to 28 U.S.C. 1361,[2] which provides the following:

"The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

---

**1.** Prior to amendment in October, 1976, 28 U.S.C. 1331(a) granted original jurisdiction over civil actions arising under the Constitution or laws of the United States, if the matter in controversy exceeds the sum of $10,000. Although this action clearly arises under the Constitution of the United States, the Court is not satisfied that the jurisdictional amount requirement of $10,000 has been met. In fact, from the allegations in the Complaint and the facts of the case as stipulated by the parties, the Court is reasonably convinced that the jurisdictional amount requirement of Section 1331 is lacking. Plaintiffs have also urged jurisdiction of the Court by virtue of the Tucker Act, 28 U.S.C. 1346(a)(2). The Tucker Act, however, does not provide jurisdiction for cases such as this, where the relief sought is only equitable in nature and where no money judgment is prayed for. *U. S. v. Jones,* 131 U.S. 1, 9 S.Ct.

669, 33 L.Ed. 90 (1889); *Wells v. U. S.,* 280 F.2d 275 (C.A. 9, 1960); *Blanc v. U. S.,* 244 F.2d 708 (C.A. 2, 1957), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957); *Ford Brothers v. Eddington Distilling Co.,* 30 F.Supp. 213 (M.D. Pa., 1939); *DiBattista v. Swing,* 135 F.Supp. 938 (D.Md., 1955); *Blaze v. Moon,* 315 F.Supp. 495 (S.D.Texas, 1970), aff'd 440 F.2d 1348 (C.A. 5, 1971).

**2.** Plaintiffs have also asserted jurisdiction by virtue of the Administrative Procedure Act 5 U.S.C. 701 et seq. This assertion has, however, been placed to rest by *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) which holds in part that the APA does not afford an implied grant of independent subject-matter jurisdiction permitting federal judicial review of agency action."

Traditionally, mandamus relief was confined to purely ministerial duties. Its scope, however, has been gradually expanded to include suits by those who seek performance of constitutional duties owed them by Defendants who have a clear duty to perform said duties and where there is no other relief available. *Burnett v. Tolson,* 474 F.2d 877 (C.A. 4, 1973); *Brown v. Schlesinger,* 365 F.Supp. 1204 (E.D.Va., 1973); *Garmon v. Warner,* 358 F.Supp. 206 (W.D.N.C., 1973). In essence, the mandamus relief provided for by 28 U.S.C. 1361, has been expanded to include suits to compel an officer to perform a duty required by the Constitution. *Ashe v. McNamara,* 355 F.2d 277 (C.A. 1, 1965); *Martinez v. Richardson,* 472 F.2d 1121 (C.A. 10, 1973); *State of Washington v. Udall,* 417 F.2d 1310 (C.A. 9, 1969); *Mollohan v. Gray,* 413 F.2d 349 (C.A. 9, 1969); *Pence v. Morton,* 391 F.Supp. 1021 (D.Alaska, 1975); *Murray v. Vaughn,* 300 F.Supp. 688 (D.R.I., 1969); *Knoll Associates, Inc. v. Dixon,* 232 F.Supp. 283 (S.D.N.Y., 1964); *Harms v. Federal Housing Administration,* 256 F.Supp. 757 (D.Md., 1966); *Walker v. Blackwell,* 360 F.2d 66 (C.A. 5, 1966); *Udall v. Oil Shale Corp.,* 406 F.2d 759 (C.A. 10, 1969), rev'd on other grounds sub nom. *Hickel v. Oil Shale Co.,* 400 U.S. 48, 91 S.Ct. 196, 27 L.Ed.2d 193 (1970). Plaintiffs in the present suit base their claim upon asserted constitutional rights and the denial thereof by Defendants. They seek relief by way of requiring that Defendants recognize said constitutional rights. Jurisdiction is, therefore, afforded under 28 U.S.C. 1361.

### Findings of Facts

The parties to this action submitted a stipulation of all the facts relevant in the case.

The Court, having considered said stipulation and all other matters raised by the record, makes the following findings of facts:

1. Pedro J. Alberio is a citizen of the United States residing in Guaynabo, Puerto Rico. He was a Civil Service employee of the United States Customs Service, with a preference eligible ten point disabled veteran rating and was assigned to the District of Puerto Rico until his discharge on August 27, 1975.

2. Ismael Rivera is a citizen of the United States, residing in Bayamón, Puerto Rico. He is employed by the American Federation of Government Employees, AFL–CIO, as National Representative for the Puerto Rico and Virgin Islands area.

3. Local 2577, American Federation of Government Employees, AFL–CIO, hereinafter referred to as "Local 2577" is an autonomous labor union local, chartered by the American Federation of Government Employees, AFL–CIO, hereinafter referred to as AFGE.

It is an unincorporated voluntary association whose membership consists of employees, including supervisors, employed in the Puerto Rico District of the United States Customs Service. It acts as the exclusive representative for bargaining unit employees in the San Juan District of the United States Customs Service.

4. The American Federation of Government Employees, AFL–CIO, is an unincorporated voluntary association with headquarters in Washington, D.C., and operates under a charter issued in 1932 from the AFL–CIO for the purpose of representing civilians employed by the Federal Government.

5. Defendants Robert E. Hampton, Georgiana H. Sheldon, and Ludwig J. Andolsek, are, respectively, the Chairman, Vice-Chairman and Commissioner of the United States Civil Service Commission, an independent agency of the United States Government. Defendant Commissioners are empowered to administer the Civil Service Laws and other related personnel statutes of the United States, and to implement these laws with rules and regulations which protect and preserve the integrity of the Civil Service system; to take such action as may be necessary, by direction to federal agencies or by report to the President or

otherwise, and to preserve the integrity of these laws and regulations and the Federal Civil Service system generally.

6. Defendant William E. Simon at all times material herein, was the Secretary of the Treasury, an executive department of the United States Government, and in such capacity he is empowered to supervise and direct said Department. He had full authority over all personnel employed by that Department and its constituent Bureaus and Services, and was responsible for proper interpretation and implementation of personnel policies in accordance with such laws and Civil Service Commission regulations.

7. Defendant Vernon D. Acree, at all times material herein, was Commissioner of Customs, appointed by the Secretary of the Treasury, and as such was the head of the United States Customs Service which is an organizational entity within the Department of the Treasury. He had responsibility and authority to direct the activities and personnel policies of that entity, to supervise and direct its employees, and to implement by proper regulation and interpretation the personnel statutes and regulations of the Civil Service Commission and the Department of the Treasury.

8. Plaintiff Pedro J. Alberio was employed by the United States Customs Service in its Puerto Rico District from August 6, 1961 until the effective date of his discharge, August 27, 1975.

9. By notice letter dated June 26, 1975, Plaintiff Alberio was advised that he would be removed from his position of Supervisory Customs Patrol Officer, GS–11, for alleged violation of Department of Treasury, Minimum Standard of Conduct, Section 0.735.48, entitled "Giving Testimony" and Customs Conduct and Employees Responsibilities, Chapter 735, Subchapter 2, Part 12, entitled "Furnishing Testimony and Information." These charges were based upon allegations that he made false statements and representations in regard to an investigation into a matter within the jurisdiction of the Customs Service and the Immigration and Naturalization Service concerning fraudulent obtainment of visas and participation of Customs employees therein in violation of criminal statutes. By letter dated August 20, 1975, from Albert F. Bazemore, Regional Commissioner, Customs Service, Plaintiff Alberio was notified that the reasons for discharge in the June 26, 1975, notice letter were found by the Regional Commissioner to be fully supported by the evidence and warranted his removal as proposed to promote the efficiency of the service, his removal to be effective August 27, 1975. The removal notice letter of August 20, 1975, informed him of his appeal rights to the Civil Service Commission, hereinafter referred to as the "CSC."

10. Plaintiff Alberio timely appealed his adverse action removal to the CSC, Federal Employee Appeals Authority, (hereinafter FEAA), New York Field Office, and by letter dated September 29, 1975, submitted the name of Ismael Rivera as his selected personal representative.

11. By letter dated January 23, 1976, the FEAA informed Plaintiffs Alberio and Rivera that the Department of the Treasury had raised a question of conflict of interest. The FEAA determined that such a conflict would occur if Rivera, a National Representative for AFGE, the union having exclusive representation of the Customs Service employees, were to represent Alberio, a supervisor whose subordinates are members of the recognized bargaining unit. On February 5, 1976, Plaintiff Alberio called Bert Ganzer, Chief Appeals Officer in the FEAA New York Office, and informed him that he was submitting Blas C. Herrero, Esquire, as his representative. On February 6, 1976, he wrote a confirming letter to the FEAA New York Office, in which he pleaded for reconsideration of his right to designate Plaintiff Rivera. On February 26, 1976, and after consultation with Union Officials and Rivera, he wrote to the FEAA New York Office, cancelling his selection of Blas C. Herrero, Esquire, and reselecting Plaintiff Rivera as his personal representative. By letter dated March 2, 1976, the FEAA New York Office advised Plaintiff Alberio that he must obtain a representative other

than Ismael Rivera, and that failure to do so would constitute want of prosecution and a waiver of his right to a hearing. By letter dated March 19, 1976, the FEAA New York Office served Plaintiff Alberio with notice allowing him until April 5, 1976 to designate a representative other than Ismael Rivera. On April 7, 1976, the FEAA granted an extension of this deadline to the close of business on April 15, 1976. The present action resulted in the parties agreeing to indefinitely extend said deadline, and the Court has recognized this extension in its Order of April 20, 1976.

12. Plaintiff Ismael Rivera has been a salaried employee of AFGE, since March 1, 1970. He does not hold, and has never held, any elective office in AFGE or in any of its affiliated Locals. He is directly supervised by the National Vice-President for AFGE's Fifteen District, its overseas District, Elwin Lewis, whose office is located in AFGE's National Headquarters' building in Washington, D.C. Among his duties as a National Representative in the Puerto Rico and Virgin Islands area Rivera services Locals and members, and acts as representative of non-supervisory members of the bargaining units in administrative proceedings and hearings, including agency and CSC adverse actions proceedings. He has also acted as personal representative of appellants in adverse action hearings and proceedings of the FEAA, and now acts as personal representative for appellants in FEAA hearings and proceedings.

13. In February and March of 1973, Plaintiff Rivera attended meetings as an AFGE representative, with Customs Service and the Department of Labor concerning matters of labor relations.

14. Executive Order 11491, 5 U.S.C. 7301, issued in 1969, creates a formal labor relations program for the executive branch of the Federal Government, and contains a prohibition against participation by supervisory employees in the management of unions and against inclusion of such employees in recognized bargaining units.

15. During the time Mr. Rivera is representing Alberio he will be paid by the Union, and said representation is taking place as part of his work for and on behalf of the Union, and as a service of the Union to one of its members.

## CONCLUSIONS OF LAW

The issue presented is not complex. Plaintiffs are asserting the right of Alberio to have a representative of his choice appear on his behalf before the FEAA. The question to be answered, however, is whether Alberio's choice of representation is *unrestricted.*

■ A reading of applicable statutory provisions leads us to the inescapable conclusion that the right of an employee to representation of his choice in adverse action proceedings before the FEAA is not an absolute one, but rather one that the Commission is entrusted to define and limit through appropriate regulations and standards. Indeed, applicable Section 7701 of Title 5, United States Code, which refers to the right of a preference eligible employee to appeal to the Civil Service Commission from an adverse action, states in its pertinent part as follows:

"A preference eligible employee . . . is entitled to appeal to the Civil Service Commission from an adverse decision under Section 7512 of this title of an administrative authority so acting. The employee shall submit the appeal in writing within a reasonable time after receipt of notice of the adverse decision, and is entitled to appeal personally or through a representative under regulations prescribed by the Commission."

■ A language of this statute is clear and unequivocal: the employee is entitled to appeal personally or through a representative *under regulations prescribed by the Commission.* It is evident that in enacting Section 7701, Congress did not intend the employee's right to be an unfettered one. Notwithstanding this, Plaintiffs would have this Court conclude that since there were no written regulations directly applicable to

this situation at the time this case arose,[3] the Civil Service Commission and the FEAA are powerless to impose any such limitations on Alberio's choice of representation. [This conclusion does not follow. Alberio's right to a representative of his choice is neither statutorily nor constitutionally absolute.] It can be subject to reasonable limitations based on the government's interest in the efficient administration of the federal agency involved, as well as its interest in maintaining orderly administrative procedures. *Downing v. Le-Britton, et al.,* 550 F.2d 689. 1st Circuit, decided March 4, 1977. See also *In the Matter of American Federation of Government Employees, AFL–CIO, Local 2741 and the D.C. Department of Recreation,* Case No. 54012, District of Columbia Labor Relations Board, decided April 21, 1976.

▇▇▇▇ An administrative agency, when acting in a quasi-judicial capacity has an inherent power and duty to regulate the conduct of parties appearing before it. The requirement that said parties be free from conflicts of the nature here in question would appear to be so fundamental to the proper functioning of such a body as to require no specific regulation.

▇▇ If we focus on the nature of the competing interests between Alberio's allegedly unfettered right to choice of representation, as compared to governmental in-

---

**3.** Prior to November 2, 1976, Section 772.-307(c)(1) of the Code of Federal Regulations, read as follows:

"(c) Hearing procedures. (1) *An Appellant is entitled to appear at the hearing on his appeal personally or through or accompanied by his representative.* The agency is also entitled to participate in the hearing. Both parties are entitled to produce witnesses. The Appeals Authority is not authorized to subpoena witnesses." (Our Emphasis).

On November 2, 1976, however, said section was amended to provide as follows:

"(c) Hearing procedures. (1) *An appellant is entitled to appear at the hearing on his/her appeal personally or through or accompanied by a representative.* The agency also is entitled to participate in the hearing. The employee will designate his/her representative, if any, in writing to the Federal Employee Appeals Authority, with a copy of the designation provided to the agency. Any subsequent changes in representative also will be in writing. *While normally an appellant may choose anyone he/she wishes to serve as representative, the agency may challenge the appellant's choice of representative before the appeals officer on the grounds of conflict of position or conflict of interest.* Such a challenge must be made within 10 days after receipt of the notice of designation of representative and must be disposed of before consideration of the merits of the case. If the appellant changes his/her representative during the course of the proceedings, the agency will be given an opportunity to challenge the new selection. There shall be no interlocutory appeals from the appeals officer's determination with regard to such a challenge." (Our emphasis).

Although the 1976 amendment to Section 772.307(c)(1), which clearly contemplates the exclusion of a designated representative on the grounds of conflict of interest, is not control-

ling in the present case due to the fact that it became effective after the controversy in this case arose, it is, nonetheless, significant in that it gives us an insight into the commission's construction of the statutory rights involved, a construction which should be accepted unless there are cogent and persuasive reasons for rejecting it. *U. S. v. Shreveport Grain and Elevator Co.,* 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932); *Norwegian Nitrogen Products Co. v. U. S.,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); *Helvering v. Winmill,* 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938); *U. S. v. Grunenwald,* 66 F.Supp. 223 (W.D.Pa., 1946). Moreover, the fact that prior to November, 1976, Section 772.307(c)(1) did not contain explicit limitations on the employer's choice of representation, is not indicative of an unrestricted or absolute right to representation of one's choice, particularly in light of the limiting language of 5 U.S.C. 7701. On the contrary, it seems evident that even prior to the November 1976 amendment, the Commission's interpretation of Section 772.307(c) was to the effect that the employees did not in fact enjoy an absolute right to unrestricted choice of representation. Thus, in light of the well established principle that the interpretation of a regulation by the agency that administers it is properly persuasive and is entitled to great weight because such agency is clothed with the legal power of interpreting its own rules and regulations and any phrases contained therein, this Court has found no cogent or persuasive reason to reject such interpretation. *Davis v. Manry,* 266 U.S. 401, 405, 45 S.Ct. 163, 69 L.Ed. 350 (1925); *Baltimore & Ohio R. Co. v. Jackson,* 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862 (1957); *U. S. v. American Trucking Assns.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *U. S. v. Seaboard Coast Line Railroad Co.,* 368 F.Supp. 1079 (M.D.Fla., 1973).

**454**

terest in the maintenance of orderly administrative practices (Cf. *Hannah v. Larche,* 363 U.S. 420, 440–44, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Cafeteria Workers Local 473 v. Elroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Drown v. Portsmouth School District,* 435 F.2d 1182, 1184 (C.A. 1, 1970); *Downing v. LeBritton,* supra), we must forcefully conclude that free choice for its own sake does not constitute in itself a particularly compelling interest (see *Downing v. LeBritton,* supra) and that the promotion of irreproachable governmental practices must prevail. Even in the context of a criminal trial, it has been pointed out that "the right to choose a specific attorney is not absolute, but is subject to the court's interest in orderly procedures." *Downing v. LeBritton,* supra. See also *Maynard v. Meachum,* 545 F.2d 273 (C.A. 1, 1976).

Thus, pitted against the government's manifested interest in the efficient administration of the federal agency involved, not to mention its interest in maintaining orderly administrative procedures, Plaintiffs' interest in an unrestricted choice of representation seems rather weak, particularly in the absence of any showing or indication that Alberio will be unable to present his case fully before the appellate body either personally or through some other qualified representative. Moreover, courts have traditionally recognized an agency's broad discretion in the administration of its own internal affairs and in the absence of any showing that the procedure afforded Alberio does not comport with due process dictates, this Court is not inclined to rule otherwise especially where the right being asserted can be subject to reasonable limitations. See *Downing v. LeBritton,* supra.

Therefore, the question left for this Court to consider is whether the limitation imposed on Alberio's right to choose his representative in this case is reasonable or not. In assessing this particular point in question we turn to the grounds and interests asserted by the government justifying their use of the Commission's authority to limit Alberio's choice of representation.

In essence, the government alleges, and the Commission has so concluded, that a conflict of interest would exist should a union official be allowed to represent a supervisor whose subordinates are members of the labor organization seeking to represent the supervisor. Defendants submit that this situation would endanger the efficient administration of the United States Customs Services inasmuch as it would seriously affect the loyalty owed by Alberio to management and managerial policies.

The government's fears are justified and so is the concomitant limitation on Alberio's right to choose his representative. Plaintiff Alberio is a supervisor and, as such, part of the management. Consequently, the exigencies of his position call for his active participation in the formulation of agency policies and procedures. At the very least, he would be required to implement and oversee employee compliance with managerial policies on a daily basis. Under the circumstances, it is self evident that should the union represent Alberio before the FEAA, the government's interest in the efficient administration of the United States Customs Service would be seriously jeopardized. Consequently, the limitation imposed on Alberio's right to choose his representative was reasonable and proper.

In view of the above, this case is hereby dismissed and the Clerk is directed to enter Judgment accordingly.

IT IS SO ORDERED.