OPINION OF THE COURT
Joseph J asp an, J.
The defendant is alleged to have installed shunting devices in his home to avoid payment of sums normally due for *403 electric current provided by Long Island Lighting Company (LILCO). As a consequence, he was charged in an indictment with theft of services (Penal Law, § 165.15, subd 5) and grand larceny in the third degree (Penal Law, § 155.30). The defendant now moves to suppress some of the evidence seized during the course of the investigation.
FACTS
As a result of an anonymous tip, Joseph Di Gennaro, manager of the Revenue Protective Division of LILCO for Suffolk County, went to the defendant’s home at 94 Handsome Avenue, Sayville, on May 22, 1978. Neither the defendant nor his wife was at home at the time. Mr. Di Gennaro examined an electric meter positioned on the outer wall of the house adjacent to the driveway. Upon opening the meter, he found unauthorized wires attached which opened the circuit and which are alleged to have prevented the meter from registering the full amount of the current used.
The inspector then entered the basement of the house, without a warrant or permission, by lifting a closed but unlocked modern shed type door. He went there to follow some wiring and to read a gas meter which had not been visited in six months. He found a time clock on top of the panel behind an electric water heater which had the effect of providing unmetered electric current for that device. He took three photos in that basement depicting the "offending” device, a condition no longer in evidence at the time of an arranged inspection one week later.
Defendant does not challenge the reasonableness or propriety of the inspection of the outside electric meter, but does contend that any evidence derived from the entry into the basement be suppressed. Although the parties placed in issue a question as to whether the cellar door was forced open or yielded to normal pressure, it is not material to this case. The entry into the defendant’s home through a closed door, whether or not locked, is an invasion of privacy.
The court must consider whether the activities of a LILCO employee are proscribed by the Fourth Amendment and the cases in interpretation thereof.
THE LAW
The basic purpose of Fourth Amendment prohibitions against unreasonable searches and seizures "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials”. (Camara v Municipal Ct., 387 *404 US 523, 528.) "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies”. (Burdeau v McDowell, 256 US 465, 475.)
The Fourth Amendment prohibits unjustified governmental intrusions and the courts have held that evidence obtained by private persons during a search in violation thereof will not be suppressed when the private persons were not acting as an agent of or in collusion with the government. (Burdeau v McDowell, supra; People v Torres, 49 Misc 2d 39; People v Trimarco, 41 Misc 2d 775.)
For example, in Burdeau, the United States Supreme Court refused to suppress evidence obtained by an individual when he forced open the defendant’s office safe and desk, although this evidence was subsequently turned over to the Department of Justice.
Thus, based on the facts before this court, the evidence obtained by the LILCO investigator in the defendant’s basement can only be suppressed if LILCO and/or its employees are found to be agents of the State (see People v Scott D., 34 NY2d 483).
The primary purpose of the LILCO activities was to protect the integrity of its revenues and only incidentally to prosecute for deterrent purposes.
Although LILCO is highly regulated, no case has been found by the court or counsel which denominates such a utility as a quasi-governmental body. Nor is there any evidence that LILCO operates under a governmental subsidy.
An examination of the statutes related to gas and electric companies (Transportation Corporations Law, § 10 et seq.; Public Service Law, § 64 et seq.) does not indicate any legislative intent that LILCO act as its agent.
The defendant cites People v Esposito (37 NY2d 156) and People v Scott D. (supra).
In People v Esposito (supra, p 160) the court held: "It is first necessary, since they were not acting pursuant to their special powers, to determine the status of the customs officer who searched Esposito and the other defendants. For the suppression of evidence acquired during an illegal search is a measure intended to curb potential excesses by law enforcement agencies; it does not apply to searches conducted by civilians. *405 (People v Horman, 22 NY2d 378, cert den 393 US 1057.) Where civilians, or law enforcement officers possessed only of special powers, act as agents of the police, however, the full panoply of constitutional provisions and curative measures applies, and that is the case here. (Corngold v United States, 367 F2d 1; McCormick, Evidence [2d ed], § 168, pp 372-373.)”
In People v Scott D. (supra) the court in recognizing that the ban against unreasonable searches and seizures applied to administrative actions as well as criminal proceedings, struck down a strip search by school authorities looking for drugs. But there the court specifically found that the public school teachers were acting as agents of the State and not as private individuals when they searched the student for the illegal drugs.
Accordingly, I find that since LILCO is not an agent of the State and its investigator did not act in collusion with the police or any other State agency in the instant investigation, the Fourth Amendment did not reach this basement search and the motion to suppress must be denied.